MICHAEL P. DARROUGH, Plaintiff-Appellant, v. GLENDALE HEIGHTS
COMMUNITY HOSPITAL, Defendant-Appellee.

Second District   No. 2—91—1390

Opinion filed September 29, 1992.

David J. Comeau, of Anesi, Ozmon, Rodin & Associates, Ltd., of Chicago, for appellant.

Douglas J. Esp and Stephen R. Swofford, both of Hinshaw & Culbertson, of Chicago, and Robert G. Black and Alice Kehl Kush, both of Hinshaw & Culbertson, of Lisle, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

Plaintiff, Michael P. Darrough, appeals the circuit court's order granting summary judgment in favor of defendant, Glendale Heights Community Hospital, on plaintiff's negligence claim. Plaintiff asserts that the circuit court incorrectly concluded that plaintiff had failed to establish a *prima facie* claim of negligence as a result of the alleged malfunction of the leg rest of defendant's wheelchair and, therefore, entered summary judgment in favor of defendant as a matter of law. We reverse and remand.

On September 14, 1986, plaintiff injured his knee during a softball game and was taken to defendant's emergency room. The next morning, a surgeon performed reconstructive surgery and wired together the shattered fragments of plaintiff's kneecap, which was then immobilized by placement in a closed cast.

On September 23, 1986, plaintiff was taken from his hospital room to the X-ray department for a chest X ray in an attempt to diagnose an unrelated congestion. An unidentified male candy striper placed plaintiff in a wheelchair, on which the candy striper raised and set a movable leg rest to hold plaintiff's casted injured leg in a horizontal position parallel to the floor.

The wheelchair was manufactured by defendant, Ivancare, Inc., which was previously granted summary judgment independent of this appeal. The wheelchair was one of two models supplied to defendant, the other not having leg rests. The leg rest in question was controlled by a cam-activated lever, which was released to elevate the leg rest and which then automatically locked. The leg rest remained in the position thus set until the cam-activated lever was again released, which would cause the leg rest to immediately drop to its lowest, vertical position perpendicular to the floor.

The candy striper pushed the wheelchair containing plaintiff to the X-ray department without incident. The floor was entirely smooth, and the wheelchair never bumped any walls or doorjambs. An X-ray technician then moved plaintiff from the X-ray department reception room into the X-ray room, took plaintiff's X rays, and returned plaintiff to the reception room, again all without incident and with plaintiff remaining in the wheelchair with his injured leg ele-

vated. Another hospital employee, who was in charge of patient transport, then appeared and began to return plaintiff to his hospital room.

The patient transport employee released the brakes on the wheelchair in which plaintiff was seated, which had been set by the X-ray technician, and began pushing the wheelchair with both hands on the handles protruding from the rear of the wheelchair. Throughout this entire time, plaintiff had kept his hands in his lap and did not touch any part of the wheelchair. The wheelchair had moved less than a single revolution of the rear wheels when the leg support collapsed, and plaintiff's injured leg fell to the floor. The patient transport employee lifted plaintiff's casted injured leg, reset the leg rest, and, after checking to be sure the leg rest would hold, once again placed plaintiff's injured leg on the leg rest. Neither plaintiff nor the patient transport employee knew what had caused the leg rest to collapse.

After returning plaintiff to his room and outside his presence, the patient transport employee inspected the wheelchair and found the leg rest to be operating correctly. Therefore, he returned the wheelchair to stock. As a result, the wheelchair in which plaintiff was sitting when the leg rest collapsed was not identified, and defendant was not able to produce the wheelchair for inspection or testing. However, all wheelchairs purchased when defendant began operations in 1980 were still in service on the date of plaintiff's injury and at all time relevant to these proceedings. No incidents similar to that which occurred here had occurred either before or after that time.

Plaintiff filed suit and alleged that, as a result of the sudden jarring and bending of plaintiff's knee within the cast when the leg rest of the wheelchair collapsed, the reconstruction of plaintiff's knee failed and eventually required the total removal of his kneecap. Specifically, plaintiff's complaint alleged that defendant "possessed, operated, managed, maintained and controlled or had a duty to possess, operate, manage, maintain and control, both directly and indirectly, individually and through [its] agents, servants, and employees, a certain wheelchair on the premises [of defendant]," and defendant had "improperly operated, managed, maintained and controlled the aforesaid wheelchair, so that as a direct and proximate result thereof, the Plaintiff was injured."

Defendant moved for summary judgment and argued this circumstantial evidence permitted multiple inferences as to the cause of the collapse of the leg rest, and, therefore, plaintiff's assertion that the candy striper had failed to properly set the leg rest was mere conjecture and speculation. Thus, defendant argued, plaintiff had failed to establish a *prima facie* claim for negligence, and summary judgment

was proper. In opposition to defendant's motion, plaintiff asserted that any multiple inferences permissible from the undisputed, although circumstantial, facts created a material question of fact precluding summary judgment.

During the hearing on defendant's motion, defendant argued that defendant did not have exclusive control of the wheelchair because plaintiff had been left unattended for some period of time and may himself have released the leg rest control, cam-activated lever. Plaintiff responded that there was no evidence that plaintiff had done anything to cause the incident or that the wheelchair had collided with anything that could have jarred the leg rest and caused the leg rest to fall. The circuit court asked if plaintiff had a claim for *res ipsa loquitur*, to which defendant's counsel responded that plaintiff's claim sounded only in strict negligence, and defendant's counsel again later during argument asserted that plaintiff had not claimed *res ipsa loquitur*. The circuit court granted defendant's motion for summary judgment, and in its letter of opinion expressly noted:

> "From the evidence taken as a whole in this case the trier of fact would be left to speculate as to why the leg support fell. Was it a defect in the chair, was it improperly set initially by the candy striper, did the plaintiff himself accidentally bump the release lever, or did it just slip due to the chair being pushed around down to and in and out of the xray [*sic*] department for some unknown reason. Nothing guides us to a conclusion as to any of these possibilities either directly or circumstantially. This being the case, I have no alternative but to grant defendant's motion."

The circuit court subsequently denied plaintiff's motion for reconsideration, and plaintiff now appeals, asserting that the circuit court erred as a matter of law in granting defendant's motion for summary judgment because a material issue of fact existed.

The purpose of a motion for summary judgment is not to try a question of fact, but rather to determine if a question of fact exists. (*Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294.) Summary judgment is proper when, construing the evidence in the record strongly against the movant and liberally in favor of the opponent (*In re Estate of Whittington* (1985), 107 Ill. 2d 169, 177; *Dockery v. Ortiz* (1989), 185 Ill. App. 3d 296, 304-05), the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c); *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 421; *Hagy v. McHenry*

*County Conservation District* (1989), 190 Ill. App. 3d 833, 842). To prevent entry of summary judgment, an opponent must present a *bona fide* factual issue and not merely general denials and conclusions of law. (*Wil-Shore Motor Sales, Inc. v. Continental Illinois National Bank & Trust Co.* (1984), 130 Ill. App. 3d 167, 172.) An issue is "genuine" only if there is evidence to support the position of the non-moving party. (*N.W. v. Amalgamated Trust & Savings Bank* (1990), 196 Ill. App. 3d 1066, 1075.) Thus, although the party opposing summary judgment need not prove his case at this preliminary stage, he must present some factual basis that would arguably entitle him to a judgment under the applicable law. *Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 939.

■ We first note that although the circuit court apparently recognized the applicability of the doctrine of *res ipsa loquitur* when it inquired whether plaintiff had made such a claim, both the circuit court and defendant referred to a *claim* of *res ipsa loquitur*, which claim is not necessary. Rather, *res ipsa loquitur* is merely a rule of evidence, which relates to the sufficiency of a plaintiff's proof (*Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 274) and which involves a species of circumstantial evidence that permits the trier of fact to draw an inference of negligence when direct evidence is primarily within the control of the defendant (*Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 592). Plaintiff's failure to contradict defendant's accurate, although irrelevant, assertion that no *claim* of *res ipsa loquitur* was pleaded does not prevent us from addressing this apparent confusion surrounding the pleadings necessary to support application of the evidentiary doctrine of *res ipsa loquitur* as a matter of law. See *In re Marriage of Sutton* (1990), 136 Ill. 2d 441, 446 (waiver is limitation on parties, not on court).

■ To state a claim for negligence, a plaintiff must allege: (1) a duty flowing to the plaintiff from the defendant and (2) breach of such duty, which (3) proximately causes (4) injury to the plaintiff. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140.) Although proximate cause must be established by normal manners of proof (*Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 304), the evidentiary doctrine of *res ipsa loquitur* permits evidence of a defendant's exclusive control of the instrumentality that caused a plaintiff's injury and the unlikelihood of such injury absent the defendant's negligence as circumstantial evidence of negligence in lieu of direct evidence (see *Dyback v. Weber* (1986), 114 Ill. 2d 232, 241 (with adoption of comparative negligence, freedom from contributory negligence no longer necessary to invoke doctrine of *res ipsa loquitur*)). To invoke

the doctrine of *res ipsa loquitur*, a plaintiff must allege general negligence sufficient to notify the defendant that the doctrine is applicable. (*Deming v. Montgomery* (1989), 180 Ill. App. 3d 527, 532; *County of Du Page v. Kussel* (1973), 12 Ill. App. 3d 272, 277, *aff'd* (1974), 57 Ill. 2d 190; *Erckman v. Northern Illinois Gas Co.* (1965), 61 Ill. App. 2d 137, 144.) "[O]nly general allegations charging a defendant with 'negligently and carelessly controlling, managing and maintaining' an instrumentality" will support application of the doctrine of *res ipsa loquitur*. (*Erckman*, 61 Ill. App. 2d at 144.) However, no special form of words is necessary to rely on the doctrine of *res ipsa loquitur*. (*Kruger v. Newkirk* (1976), 40 Ill. App. 3d 581, 585.) Because Illinois requires fact pleading (Ill. Rev. Stat. 1987, ch. 110, par. 2—603), *res ipsa loquitur* is often pleaded as a separate claim (see *Tamura, Inc. v. Sanyo Electric, Inc.* (N.D. Ill. 1986), 636 F. Supp. 1065, 1067-68) and, therefore, has sometimes been referred to as a cause of action (see, *e.g., Spidle v. Steward* (1980), 79 Ill. 2d 1, 7). Nevertheless, *res ipsa loquitur* is "simply a rule of evidence relating to the sufficiency of plaintiff's proof." (*Lynch*, 93 Ill. 2d at 274.) The determination of whether *res ipsa loquitur* applies is a question of law, which the court in the first instance must decide based on whether the plaintiff has pleaded facts that would ever establish that the defendant had exclusive control over the instrumentality of the plaintiff's injury and that the injury is otherwise unexplainable absent the defendant's negligence. (*Spidle*, 79 Ill. 2d at 7.) Thus, our initial inquiry is whether, as a matter of law, plaintiff offered some factual basis to establish such foundation for application of the doctrine of *res ipsa loquitur*.

*Res ipsa loquitur* does not require absolute and conclusive proof of its foundation. (*Barkei v. Delnor Hospital* (1988), 176 Ill. App. 3d 681, 688.) "Exclusive control" has been used interchangeably with "management or control" to describe the first criterion necessary for application of *res ipsa loquitur*. (*Lynch*, 93 Ill. 2d at 272.) Such control is a not a rigid standard, but a flexible one in which the key question is whether the probable cause of the plaintiff's injury was one which the defendant was under a duty to the plaintiff to anticipate or guard against. (*Lynch*, 93 Ill. 2d at 274.) A defendant's control of the instrumentality at the time of the alleged negligence is not defeated by lack of control at the time of the injury. (*Kruger*, 40 Ill. App. 3d at 585.) Rather, if the instrument that causes the injury was in the control or management at a time prior to the injury and there is no change in conditions or intervening act that could reasonably have caused the event resulting in the injury, sufficient control and management is established for invocation of the doctrine of *res ipsa loqui-*

*tur.* (*Kruger*, 40 Ill. App. 3d at 586.) That the acts and conduct of a defendant were reasonable does not destroy the inference of negligence, but will allow a jury to reject such inference after weighing all the evidence. (*Imig v. Beck* (1986), 115 Ill. 2d 18, 31.) Finally, a plaintiff's own conduct does not defeat application of the doctrine of *res ipsa loquitur*, but rather is a question of the plaintiff's own comparative negligence. *Dyback*, 114 Ill. 2d at 241.

■ In this instance, the alleged negligence occurred when the unidentified candy striper allegedly set the leg rest improperly. Although defendant asserts that plaintiff had control of the wheelchair for a short period of time when he was left to wait in the X-ray reception area for a patient transport employee to return him to his room, there is no evidence that plaintiff did anything to the chair. However, defendant's own expert testified at his deposition that if plaintiff had released the cam-activated lever controlling the leg rest, it would have immediately fallen. Therefore, that the leg rest did not fall until the patient transport employee arrived and resumed control by pushing the wheelchair belies any tampering with the leg rest cam-activated lever by plaintiff. Additionally, plaintiff testified at his own deposition that he never touched the cam-activated lever. Thus, the circumstances supporting an inference of defendant's negligence are not destroyed by the intervening control plaintiff may have possessed. See *Kruger*, 40 Ill. App. 3d at 585.

Nor do we find that this incident is of a type that normally occurs in the absence of negligence. Defendant's own employee's deposition indicated that no similar incident has ever happened before or since, and the deposition of codefendant Ivancare's expert similarly identified no comparable incidents. Thus, plaintiff sufficiently pleaded facts to support application of the evidentiary doctrine of *res ipsa loquitur* to survive defendant's motion for summary judgment.

Despite the application of the doctrine of *res ipsa loquitur*, we also consider defendant's assertion that circumstantial evidence is sufficient only if it permits but one conclusion. (*Kellman v. Twin Orchard Country Club* (1990), 202 Ill. App. 3d 968, 974.) In support of such assertion, defendant urged both below and in its brief on appeal a line of cases concerning an owner's negligent installation or maintenance of a floor. (See *Kellman*, 202 Ill. App. 3d at 974; *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813.) However, *Kellman* is in direct conflict with *Mort v. Walter* (1983), 98 Ill. 2d 391, on which it relied and which held that "the use of circumstantial evidence is *not* limited to those instances in which the circumstances support only one logical conclusion. Instead, circumstantial evidence will suffice whenever an

inference may reasonably be drawn therefrom." (Emphasis added.) (98 Ill. 2d at 396.) In both *Kellman* and *Kimbrough*, the circumstantial evidence at issue concerned the plaintiffs' falls as the result of alleged improper floor surfaces. However, in Illinois the material used or manner in which such materials were applied must also be shown to have been improper before the trier of fact will be permitted to consider the fact of a plaintiff's fall as circumstantial evidence of negligence. (*Lucker v. Arlington Park Race Track Corp.* (1986), 142 Ill. App. 3d 872, 874.) Such cases are therefore distinguishable both because *Kellman* incorrectly weighed the circumstantial evidence presented there and because plaintiff here has not alleged negligence as a result of defendant's negligent care of its floor, but rather has alleged injuries sustained when the wheelchair in which he was sitting and which was supplied by defendant collapsed.

■ Finally, the undisputed facts in this instance indicate that plaintiff's hands remained in his lap the entire time he was in the wheelchair and that, had plaintiff released the cam-activated lever, the leg rest would have immediately fallen and not remained suspended until the patient transport employee began to push the wheelchair. It is also undisputed that the wheelchair encountered no obstacles between the time the leg rest was set and the time that it fell and that no similar incident with any wheelchair has occurred at any time before or since as a result of mere use of a wheelchair. Despite these facts, the trial court in its letter of opinion based its grant of summary judgment in favor of defendant on the possibility of multiple inferences that included plaintiff's release of the leg rest himself and the normal use of the wheelchair causing such event. Thus, the trial court not only failed to construe the facts and inferences strongly in favor of plaintiff and against defendant as it was required to so do (*In re Estate of Whittington*, 107 Ill. 2d at 177), but construed them in direct contradiction to the undisputed facts. Thus, the trial court failed to consider the undisputed facts under the standard appropriate to defendant's motion for summary judgment.

For the reasons set forth above, the order of the circuit court granting defendant's motion for summary judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BOWMAN and DOYLE, JJ., concur.