David OLSON and Gayle Olson, Individually and as Next Friends of Courtney Ann Olson, Robert Blaine Olson, and Stacy Marie Olson, Minor Children, Appellees,

v.

PROSOCO, INC., Appellant.

No. 93–228.

Supreme Court of Iowa.

Sept. 21, 1994.

James F. Pickens, Minor Barnes and Kevin S. Cavanaugh of Pickens, Barnes & Abernathy, Cedar Rapids, for appellant.

Gerald T. Sullivan and James L. Sines of Crawford, Sullivan, Read, Roemerman & Brady, P.C., Cedar Rapids, for appellees.

SNELL, Justice.

Appellant, Prosoco, Inc. (Prosoco) appeals from a jury verdict and judgment entered against it in a products liability action brought by David Olson and members of his family (Olson). The district court entered judgment against Prosoco in an amount exceeding $735,000, including $42,000 in consortium damages. Olson based his claim for damages on theories of strict liability and negligence. We affirm.

Numerous errors are assigned by Prosoco as grounds for reversal. Our standard of review in this case is for errors of law. Iowa R.App.P. 4.

I. Facts

David Olson is a bricklayer foreman employed by Seedorf Masonry Company (Seedorf). Late on the afternoon of December 15, 1988, Olson spotted a fifteen gallon drum of mortar cleaner sitting on the ground. To prevent the cleaner drum from freezing to the ground, he picked it up and moved it onto a nearby pallet. When Olson dropped the drum on the pallet, the bung closure popped out of the drum, splashing hydrochloric acid based cleaner into his right eye. Despite extensive medical care, Olson eventually lost sight in his right eye. In April 1991 doctors fitted Olson with an artificial eye.

The mortar cleaner, called "Sure Klean 600," is manufactured and packaged by Prosoco. The fifteen gallon drum into which Prosoco packages the cleaner is manufactured by Delta Drum Corporation (Delta Drum). The bung closures used in the fifteen gallon drums are manufactured by Rieke Corporation (Rieke). Olson initially named Rieke and Delta Drum in this lawsuit. Rieke and Delta Drum settled their cases with Olson. Olson sued Prosoco under several theories of strict liability and negligence.[1] Prosoco requested a state-of-the-art defense jury instruction with regard to Ol-

---

1. The district court submitted the following pertinent portions of jury instructions at trial:

INSTRUCTION NO. 25

. . . . .

In order to recover on their claim of negligence, the plaintiffs must prove all of the following numbered propositions:

1. The defendant was negligent in any one or more of the following ways:

a. failing to adequately warn persons in the field who may be expected to move or use Sure Klean 600 of safety precautions to use while moving or closing a container of Sure Klean 600 in 15 gallon drums; or

b. failing to select and utilize the buttress threaded two inch closure with a 15 gallon drum of Sure Klean 600 when they knew of the availability of the buttress threaded closure; or

c. failing to discover the advantages of the buttress threaded closure over the NPT threaded closure for use with a 15 gallon drum of Sure Klean 600 in the masonry construction industry; or

d. failing to test the design of the closures and drum of Sure Klean 600 under conditions which Defendant knew or should have known to exist in the field; or

e. failing to package Sure Klean 600 in an appropriate container since the 15 gallon container is awkward and creates a danger to the handler due to the size, weight and configuration of the drum.

2. The negligence was a proximate cause of damage to the plaintiffs.

3. The amount of damage.

. . . . .

INSTRUCTION NO. 26

Plaintiff claims a way in which defendant was negligent was in failing to adequately warn users of Sure Klean 600 of safety precautions to use while moving or closing a container of Sure Klean 600.

With respect to the matter of failing to adequately warn, the law requires the defendant to exercise ordinary care. If a reasonably careful person would not have provided further warnings than were provided with respect to warning of the dangers involved in the use of this product, then the failure to provide such warnings would not constitute negligence.

If a reasonably careful person would have provided additional warnings, then a failure, if any, to provide such a warning would constitute negligence.

INSTRUCTION NO. 38

In order to recover on the theory of strict liability, the plaintiffs must prove all of the following numbered propositions:

1. The defendant manufactured Sure Klean 600.

son's strict liability and negligence theories. The jury found Prosoco one-hundred percent at fault for Olson's injuries under both theories.

## II. Strict Liability and Negligence Claims

■ Prosoco claims the court erred by submitting the case on both strict liability and negligence theories. We have said that courts must give requested jury instructions when they correctly state the law applicable to the facts of the case and if the legal concept is not embodied in other instructions. *Stover v. Lakeland Square Owners Ass'n*, 434 N.W.2d 866, 868 (Iowa 1989). However, even instructions correctly stating the law should not give undue emphasis to any particular theory, defense, stipulation, burden of proof, or piece of evidence. *Dickman v. Truck Transp., Inc.*, 224 N.W.2d 459, 464 (Iowa 1974). Error in giving or refusing to

2. The defendant was engaged in the business of manufacturing Sure Klean 600.
3. The Sure Klean 600 was in a defective condition at the time it left defendant's control in one or more of the following ways:
a. It is defective as packaged in the 15 gallon drum utilizing a 2–inch NPT closure due to the failure to warn the persons in the field who may be expected to move or use the product of the safety precautions to be taken while moving or closing the 15 gallon drum; or
b. The 2–inch NPT closure and drum opening were defective as they would fail under foreseeable movement or use to securely seal or reseal the 15 gallon drum of the hazardous substance when a buttress threaded closure would properly seal the container; or
c. The 15 gallon drum was defective due to being awkward and creating a danger to the handler because of its size, weight and configuration; or
d. The 15 gallon drum was defective in that it had not been tested under conditions in the field which the Defendant knew or should have known to exist.
4. The defective condition was unreasonably dangerous to the plaintiff.
5. The plaintiff moved the Sure Klean 600 in the intended manner or in a manner reasonably foreseeable by defendant.
6. The Sure Klean 600 was expected to and did reach the plaintiff without substantial change in its condition.
7. The defect was a proximate cause of plaintiff's damage.
8. The amount of damage.
If the plaintiffs have failed to prove any of these numbered propositions, the plaintiffs are not entitled to damages under this theory of liability. If the plaintiffs have proved all of these

give instructions is reversible, only if prejudicial. *Stover*, 434 N.W.2d at 868.

Prosoco contends the submission of instructions on both strict liability and negligence theories was duplicative and confusing, resulting in prejudicial error. Prosoco asks this court to build on our holding in *Hillrichs v. Avco Corp.* in which we held that a plaintiff's strict liability claim depended on the same elements of proof as his negligence claim. *See Hillrichs v. Avco Corp.*, 478 N.W.2d 70, 75–76 (Iowa 1991). On remand, we held that only the negligence claim should be retried. *Id.*

■ Olson contends the submission of a strict liability instruction does not preclude liability based on a negligence theory. He stresses that our decision in *Hillrichs* was limited strictly to the facts of that case and claims that in the case at bar the strict

numbered propositions, then you will consider the defense of assumption of the risk as explained in Instruction No. 46 and the defense of "state of the art" as defined in Instruction No. 48 and unforeseeable misuse as defined in Instruction No. 47.
### INSTRUCTION NO. 43
The manufacturer of a product that may be dangerous in ordinary use or in a foreseeable misuse is under a duty to provide reasonable warnings. A failure to do so will render the manufacturer's product defective. In determining whether the Defendant was under a duty to give warnings and in determining whether the Defendant exercised reasonable care to discharge that duty, you shall consider the following factors:
1. The use of the product that was intended or could have been foreseen by the Defendant.
2. The level of danger posed by the use of the product.
3. The adequacy of any warning actually given.
If you find that warnings were given by any method other than a label on the product itself, and if you also find that the Plaintiff did not receive the warnings, then you must determine if the methods selected by the Defendant for communicating its warning to the Plaintiff was reasonable. In determining whether the method of communication selected by the Defendant is reasonable, you shall consider the following:
1. The level of danger posed by the product.
2. The likelihood of the warning actually reaching the ultimate user of the product given the method of communication selected by the Defendant.
3. Whether it would have been practical for the Defendant to affix the warning to the product itself.

liability and negligence instructions submitted do not depend on the same elements of proof.

In *Hawkeye–Security Insurance Co. v. Ford Motor Co.*, 174 N.W.2d 672, 684 (Iowa 1970), we adopted section 402A of the Restatement (Second) of Torts, recognizing a strict liability cause of action in products liability cases. We distinguished strict liability/design defect claims from negligence claims in *Aller v. Rodgers Machinery Manufacturing Co.*, 268 N.W.2d 830, 835 (Iowa 1978). In *Aller* the alleged design defect involved a saw which the plaintiff claimed was unreasonably dangerous when used in the normal, anticipated manner intended by the seller. *Id.* at 832. We held the presence of the "unreasonably dangerous" element in our strict liability/design defect analysis did not inject considerations of negligence into the strict liability case. *Id.* at 835. We noted that in strict liability, the plaintiff's proof concerns the condition of the product which is designed or manufactured in a particular manner. *Id.* In contrast, negligence concerns the reasonableness of the manufacturer's conduct in designing and selling the product as it did. *Id.*

Some courts have held that a product may be unreasonably dangerous and thus "defective," triggering strict liability, if the seller fails to give adequate directions or warning regarding its use. *See Tucson Indus., Inc. v. Schwartz*, 108 Ariz. 464, 501 P.2d 936, 940–41 (1972); *Anderson v. Owens–Corning Fiberglas Corp.*, 53 Cal.3d 987, 281 Cal.Rptr. 528, 536–38, 810 P.2d 549, 557–59 (1991); *Woodill v. Parke Davis & Co.*, 79 Ill.2d 26, 37 Ill.Dec. 304, 306, 402 N.E.2d 194, 196 (1980); *Owens–Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633, 641 (1992); *Mauch v. Manufacturers Sales & Serv., Inc.*, 345 N.W.2d 338, 346 (N.D.1984); *Phillips v. Kimwood Mach. Co.*, 269 Or. 485, 525 P.2d 1033, 1038 (1974). Our court has never explicitly adopted this principle. *See* Iowa Civil Jury Instruction 1000.6 cmt. (1991). In *Cooley v. Quick Supply Co.*, 221 N.W.2d 763, 765 (Iowa 1974), a case involving a prematurely exploding dynamite fuse, the jury considered both a strict liability count and a negligence count. In the strict liability count the only product defect submitted was that the fuse did not appear to be ignited when it was in fact ignited. *Id.* The sole count of negligence alleged that the defendant failed to warn as to the safe and proper use of the product. *Id.* We affirmed the jury's verdict for the plaintiff. *Id.* at 773.

Generally, there are two competing views regarding the failure to warn/strict liability question. The first is that there is little, if any, difference between strict liability and negligence in failure to warn cases. *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 467 (7th Cir.1984) (Wisconsin); *Standhardt v. Flintkote Co.*, 84 N.M. 796, 803–04, 508 P.2d 1283, 1290–91 (1973); *Opera v. Hyva, Inc.*, 86 A.D.2d 373, 450 N.Y.S.2d 615, 618 (1982); *Hardiman v. Zep Mfg. Co.*, 14 Ohio App.3d 222, 470 N.E.2d 941, 944 (1984); *Castrignano v. E.R. Squibb & Sons, Inc.*, 546 A.2d 775, 782 (R.I.1988). Opposing this view are cases that apply varying forms of a strict liability analysis in failure to warn cases. Some jurisdictions impose strict liability by imputing knowledge of a product's propensity to injure as it did to a defendant-manufacturer, and then asking the jury: With such knowledge would the defendant have been negligent in selling the product without a warning? *See Tucson Indus.*, 501 P.2d at 941; *Ulrich v. Kasco Abrasives Co.*, 532 S.W.2d 197, 200 (Ky.1976); *Phillips*, 525 P.2d at 1039; *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893, 902–03 (1975); *Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wash.2d 747, 818 P.2d 1337, 1343–46 (1991).

Other jurisdictions apply strict liability by requiring plaintiffs to prove defendants knew or should have known of the danger. *See Anderson*, 281 Cal.Rptr. at 537–38, 810 P.2d at 558–59; *Woodill*, 37 Ill.Dec. at 308, 402 N.E.2d at 198; *Zenobia*, 601 A.2d at 641; *Mauch*, 345 N.W.2d at 345. Usually, these courts require plaintiffs to prove that the defendant, "because of the 'present state of human knowledge,' knew or should have known of the danger presented by the use or consumption of a product." *Woodill*, 37 Ill. Dec. at 308, 402 N.E.2d at 198 (citing Restatement (Second) of Torts, § 402A cmt. k (1965)); *see also Zenobia*, 601 A.2d at 641; *Anderson*, 281 Cal.Rptr. at 537, 810 P.2d at 558 (To prove strict liability in failing to

warn, plaintiffs must prove that defendant did not adequately warn of risk "known or knowable in light of the generally recognized and prevailing best scientific knowledge at the time of manufacture and distribution.").

A different analysis is made in some cases to distinguish strict liability from negligence concepts in failure to warn cases on the ground that in negligence the focus is on the defendant's conduct, while in strict liability, the focus is on the condition of the product. *See Anderson,* 281 Cal.Rptr. at 537, 810 P.2d at 558; *Woodill,* 37 Ill.Dec. at 308, 402 N.E.2d at 198; *Mauch,* 345 N.W.2d at 346; *Ayers,* 818 P.2d at 1345.

After reviewing the authorities and comments on the failure to warn question, we believe any posited distinction between strict liability and negligence principles is illusory. We fail to see any distinction between negligence and strict liability in the analyses of those jurisdictions injecting a knowledge requirement into their strict liability/failure to warn equation. *See, e.g., Woodill,* 37 Ill.Dec. at 308, 402 N.E.2d at 198. The standard applied by these "strict liability" jurisdictions is exactly the same in practice as holding defendants to an expert standard of care under a negligence theory. The burden on plaintiffs is the same. They must prove a defendant knew or should have known of potential risks associated with the use of its product, yet failed to provide adequate directions or warnings to users. With regard to those jurisdictions imputing to defendants knowledge of its product's propensity to injure as it did, we have refused in the past to impose a duty upon manufacturers to warn of unknowable dangers. *Moore v. Vanderloo,* 386 N.W.2d 108, 116 (Iowa 1986).

We also find the product/conduct distinction made by several jurisdictions to justify maintaining a strict liability/failure to warn theory of little practical significance. *See, e.g., Anderson,* 281 Cal.Rptr. at 537, 810 P.2d at 558. According to courts taking stock in this distinction, under a strict liability theory the focus is on the unreasonably dangerous condition of the product. *See id.; Woodill,* 37 Ill.Dec. at 308, 402 N.E.2d at 198; *Mauch,* 345 N.W.2d at 346. In contrast, these courts hold the question in negligence cases is

whether the defendant's conduct breached a duty to exercise reasonable care. *Woodill,* 37 Ill.Dec. at 308, 402 N.E.2d at 198; *Mauch,* 345 N.W.2d at 346. In practice, the courts basing the application of a strict liability theory on this distinction cannot help but slip back into the type of analyses virtually identical to those employed in negligence cases. *See Woodill,* 37 Ill.Dec. at 308–09, 402 N.E.2d at 198–99 (holding the requirement that plaintiff plead and prove defendant knew or should have known of danger that caused injury, and failed to warn is "entirely consistent with the principles of strict liability."); *Mauch,* 345 N.W.2d at 345 (holding defendants strictly liable for failure to warn of "dangers involved in a use which can be reasonably anticipated."). Inevitably the conduct of the defendant in a failure to warn case becomes the issue. As one commentator notes regarding the product/conduct distinction, "[i]t is easy enough to assert the manufacturer's conduct is not in issue, but the 'condition of the product' test is hardly self-executing." Keith Miller, *Design Defect Litigation in Iowa: The Myths of Strict Liability,* 40 Drake L.Rev. 465, 481 (1991).

Maintaining the distinction to justify submission of failure to warn claims under both strict liability and negligence theories is a vain effort. We hold it was error to submit instructions regarding Prosoco's failure to warn under both negligence and strict liability theories. Instruction No. 43 and Instruction No. 26 were duplicative. Both instructions essentially required the jury to determine whether Prosoco negligently failed to warn users of the dangers in moving or using Sure Klean 600 in fifteen gallon containers. *See Hillrichs,* 478 N.W.2d at 76.

We believe that the correct submission of instructions regarding a failure to warn claim for damages is under a theory of negligence and the claim should not be submitted as a theory of strict liability. In testing the defendant's liability for negligence in failing to warn, the defendant should be held to the standard of care of an expert in its field. *See West v. Broderick & Bascom Rope Co.,* 197 N.W.2d 202, 210 (Iowa 1972); *Castrignano,* 546 A.2d at 782; *cf. Zenobia,* 601 A.2d at 639. The relevant inquiry therefore is whether the

reasonable manufacturer knew or should have known of the danger, in light of the generally recognized and prevailing best scientific knowledge, yet failed to provide adequate warning to users or consumers. *See West,* 197 N.W.2d at 209; *Castrignano,* 546 A.2d at 782; *cf. Zenobia,* 601 A.2d at 641; *see also* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 99, at 697 (5th ed. 1984) [hereinafter "Keeton"].

■ In reviewing the instructions given on the theory of negligence, we find that the claim of failure to warn as submitted substantially invoked this standard. Special verdict form No. 1 found Prosoco one-hundred percent liable on the claim of negligence. Also submitted by a special verdict form was the claim of strict liability under which the jury found Prosoco one-hundred percent at fault.

We have reversed and remanded cases where a general verdict of liability resulted from the submission of two theories, one of which contained an error in the instructions. *See Erickson v. Wright Welding Supply, Inc.,* 485 N.W.2d 82, 86 (Iowa 1992); *Gordon v. Noel,* 356 N.W.2d 559, 565 (Iowa 1984). In these situations, we were unable to determine that the verdict resulted from a theory that was free of error. *See Erickson,* 485 N.W.2d at 86; *Gordon,* 356 N.W.2d at 565. However, in the case at bar, the special verdicts are sufficiently insulated from each other to stand on their own. We do not believe the error in submitting a failure to warn instruction as part of the strict liability claim had any prejudicial effect on the jury's consideration of the same issue contained in the negligence claim. The separation of these theories both in theory and submission insulate them from the prejudice that may result from an undue emphasis of even correct statements of law. As such, we distinguish our decisions of *Coker v. Abell–Howe Co.,* 491 N.W.2d 143, 146 (Iowa 1992), and *Rosenau v. City of Estherville,* 199 N.W.2d 125, 133 (Iowa 1972), where the errors required a reversal. The error in the strict liability submission regarding a failure to warn in the case at bar does not require reversal.

III. State-of-the-Art Defense

Prosoco contends the district court erred in refusing its request to instruct on its "state-of-the-art" defense with regard to Olson's claim of negligence. The court did submit a "state-of-the-art" instruction regarding the strict liability claim.

■ Iowa Code section 668.12 (1991) provides:

In any action brought pursuant to this chapter against an assembler, designer, supplier of specifications, distributor, manufacturer or seller for damages arising from an alleged defect in the design, testing, manufacturing, formulation, packaging, warning, or labeling of a product, a percentage of fault shall not be assigned to such persons if they plead and prove that the product conformed to the state of the art in existence at the time the product was designed, tested, manufactured, formulated, packaged, provided with a warning, or labeled. Nothing contained in this section shall diminish the duty of an assembler, designer, supplier of specifications, distributor, manufacturer or seller to warn concerning subsequently acquired knowledge of a defect or dangerous condition that would render the product unreasonably dangerous for its foreseeable use or diminish the liability for failure to so warn.

Section 668.12 is a complete defense in product defect cases. *Fell v. Kewanee Farm Equip. Co.,* 457 N.W.2d 911, 920 (Iowa 1990). Prosoco argues a state-of-the-art instruction is required by Iowa Code section 668.12 in negligence actions because the statute specifically speaks to the allocation of "fault." Iowa Code § 668.12. Section 668.1 defines fault, for the purposes of applying chapter 668, as "one or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability." *Id.* § 668.1.

Olson counters that section 668.12's use of the term "defect" compels the submission of a state-of-the-art instruction only in strict liability cases. Olson contends it is impossible to have a state-of-the-art defense in a negligence action because if the product com-

plied with the state-of-the-art, there would be no lack of due care and no negligence.

■ Counsel for both parties present persuasive arguments on this point. Section 668.12 does concern the allocation of "fault," a concept defined in the chapter to include negligence principles. *See id.* § 668.1. On the other hand, the statute is applicable only in situations where "damages aris[e] from ... alleged defects in products." *Id.* § 668.-12.

We noted earlier in our discussion of the failure to warn concept, that the focus is on the conduct of the defendant, not the condition of the product. Section 668.12, on the other hand, provides a state-of-the-art defense for product defects. We believe the issue of the adequacy of warnings is a matter quite extraneous to the condition of the product itself. *Cf. Anderson,* 281 Cal.Rptr. at 537, 810 P.2d at 558. It is also illogical to excuse negligent conduct by a state-of-the-art defense based on the reasoning that all other manufacturers were equally negligent. Thus, the state-of-the-art defense provided by section 668.12 is incongruous when applied to claims based on negligent failure to warn.

■ We note this does not preclude defendants from presenting state-of-the-art evidence at trial. However, rather than establishing an absolute defense in negligent failure to warn cases, defendant's evidence would go to rebut the plaintiff's proof that the defendant breached a duty to exercise the degree of care a reasonable manufacturer would have used in light of generally recognized and prevailing scientific knowledge. We hold that an instruction on a state-of-the-art defense is not required in negligent failure to warn cases. The trial court properly refused to give the instruction requested by Prosoco on this issue.

IV. Sufficiency of Evidence to Submit Failure to Warn Instruction

■ There is no duty to warn where risks are known and obvious to the plaintiff. *Nichols v. Westfield Indus., Ltd.,* 380 N.W.2d 392, 401 (Iowa 1985). Prosoco contends the clumsiness and awkwardness of the drum were conditions of which Olson knew or should have known and were obvious because Olson handled the drums frequently in the course of his employment. Olson argues that the risks of the bung closure popping out when he set the drum down with the lid hand tightened were not known nor were they obvious.

We believe sufficient evidence exists in the record to support the submission of a failure to warn instruction to the jury in this case. Olson testified that he did not know how the lid came off the drum. The closure had never popped out before the accident. Olson did testify that he occasionally had problems with "cross threading" closures when screwing them into the containers. We believe the evidence presented was sufficient to submit a jury question on negligent failure to warn.

V. Failure to Submit Instruction on Unreasonable Failure to Avoid Injury

■ The doctrine of avoidable consequences states that a party cannot recover damages that result from consequences that a party could reasonably have avoided. *Coker,* 491 N.W.2d at 149. The doctrine comes into play after a legal wrong occurs, but while some damage may still be averted, and bars recovery only for such damages. *Id.* The doctrine is akin to mitigation of damages in contract actions when plaintiffs must attempt to reduce damages after an injury occurs. *Id.*

Prosoco contends Olson's failure to check the closure and wear goggles and protective gear occurred after Prosoco's negligence occurred. It argues the doctrine of avoidable consequences thus bars recovery. Olson contends the doctrine operates only after the injury occurs, but while some damage may still be averted.

■ These types of questions come down to issues of timing. *Id.* The doctrine would only operate in this case to preclude damages after the occurrence of Olson's injury. There is no legal wrong—that is no negligence—without actual injury. *See Keeton,* § 30, at 165. The factors proposed by Prosoco that would trigger the operation of the doctrine (i.e. wearing goggles) occurred before Olson's

injury and thus before Prosoco committed any legal wrong toward Olson. Moreover, there is no evidence in the record that shows Olson could do anything to mitigate his damages. We affirm the district court's refusal to instruct on this issue of defense.

## VI. Inconsistent Jury Verdicts

Jury verdicts are to be liberally construed to give effect to the intention of the jury. *Hoffman v. National Medical Enters., Inc.,* 442 N.W.2d 123, 126 (Iowa 1989). If verdicts can be reconciled in any reasonable manner consistent with the evidence and its fair inferences, and in light of the jury instructions, we will uphold them. *Id.* at 127.

Prosoco contends that because the jury found Rieke, the manufacturer of the bung closures, and Delta Drum, the manufacturer of the drums, zero percent liable, it is impossible that Prosoco could be one-hundred percent liable for Olson's injuries. Olson contends the jury could have been persuaded that Prosoco was solely liable in this case due to the unique use to which Prosoco put the closures and drums—as storage for hydrochloric acid based mortar cleaner.

We agree with Olson. It was not necessarily inconsistent for the jury to find no liability on the part of the component manufacturers, and to find Prosoco liable. Obviously, the jury believed it was the unique use to which Prosoco put the closures and drums which established Prosoco's liability to the exclusion of liability on the part of Rieke and Delta. *See generally* Keeton, § 100, at 704–06. There was no evidence that the two-inch NPT closure made by Rieke and the fifteen gallon drum made by Delta Drum were unreasonably dangerous in and of themselves. The evidence was sufficient, however, for the jury to conclude that a dangerous product was created when the NPT closure and drum were used to contain fifteen gallons of acid based mortar cleaner. The jury verdicts were consistent and the district court is affirmed on this issue.

## VII. Excessive Jury Verdict

When reviewing verdicts for excessive damages, we view the evidence in a light most favorable to the plaintiff. *DeBurkarte v. Louvar,* 393 N.W.2d 131, 139 (Iowa 1986). We will not disturb a jury verdict for damages unless it is "flagrantly excessive or inadequate, so out of reason so as to shock the conscience, the result of passion or prejudice, or lacking in evidentiary support." *Harsha v. State Sav. Bank,* 346 N.W.2d 791, 799 (Iowa 1984). None of these factors are evident in this case.

Prosoco complains of the jury's award of $20,000 for future medical expenses. Olson's ocularist testified that the cost of periodically cleaning and replacing Olson's prosthetic eye would run in excess of $22,000. Prosoco also complains the award of $10,000 for lost future earning capacity is not supported by the record. The gist of Prosoco's argument is that Olson has not missed significant amounts of work to date since recovery from his injury. However, several of Olson's coworkers testified to the substantially lower quality of work Olson performs since his injury. One coworker had to take responsibility for shabby work done by Olson since returning to Seedorf. We do not believe an award of $10,000 is unreasonable in light of this evidence. We find Prosoco's arguments for reduction of the damages for pain and suffering equally without merit. There is support in the record for all the damages the jury awarded Olson.

## VIII. Juror Misconduct

To impeach a verdict on the ground of juror misconduct, three conditions must be met:

1. Evidence from the jurors must consist only of objective facts as to what actually occurred in or out of the jury room bearing on misconduct;

2. The acts or statements complained of must exceed tolerable bounds of jury deliberation;

3. It must appear the misconduct was calculated to, and with reasonable probability did, influence the verdict.

*State v. Cullen,* 357 N.W.2d 24, 27 (Iowa 1984).

Prosoco presents affidavits from two jurors that describe an experiment per-

formed with the water filled model drums produced at trial. Prosoco contends the conduct exceeded tolerable bounds and "must have been reasonably calculated to and probably did influence the jury." Olson contends the juror affidavits are incompetent evidence. Even if they are competent evidence, Olson argues the experiment did not exceed tolerable bounds of jury conduct because the experiment did not go beyond any evidence already in the record. Olson also notes the experiments probably did not influence the jury because they were carried out by the only juror to vote contrary to a plaintiff's verdict.

We note that the experiments were cumulative of evidence already presented by expert witnesses at trial. *See State v. Thompson,* 326 N.W.2d 335, 337 (Iowa 1982). In any event, this issue fails because it falls within the ambit of our decision on juror testimony in *Ryan v. Arneson,* 422 N.W.2d 491 (Iowa 1988). There we said:

> Based on Iowa's adoption of language identical to Federal Rule of Evidence 606(b), and the policy reasons for insulating the manner in which the jury reaches its verdict, we now adopt the federal rule which protects each of the components of deliberation including juror arguments, statements, discussions, mental and emotional reactions, votes, and any other feature of the process occurring in the jury room. The district court was correct to disregard affidavits of jurors concerning a quotient verdict.

*Id.* at 495.

IX. Federal Preemption

Prosoco argues that Olson's state common law tort claims are preempted by the federal Hazardous Materials Transportation Act (HMTA). 49 App.U.S.C. § 1801 et seq. (Supp.1991). In reply, Olson contends the HMTA has no application to cases involving a consumer's end use. Moreover, Olson contends the preemption doctrine does not prevent states from imposing common law tort standards stricter than those imposed by federal law.

 Explicit federal preemption of state law occurs when Congress expressly indicates its intention to preempt state law.

*Brotherhood of Maintenance of Way Employees v. Chicago & N.W. Transp. Co.,* 514 N.W.2d 90, 93 (Iowa 1994). Implied preemption occurs if it can be determined that Congress intended to occupy an entire field, excluding state law. *Id.* Implicit preemption will most likely be found when it is determined that state law conflicts with congressional policy. *Id.*

 We find no merit in Prosoco's argument on this point. Congress enacted the HMTA in order "to improve the regulatory and enforcement authority of the Secretary of Transportation to protect the Nation adequately against the risks to life and property which are inherent in the transportation of hazardous materials in commerce." 49 App.U.S.C. § 1801 (1988). There is no indication that Congress intended to preempt common law state tort remedies arising out of a consumer's end use of a hazardous material. *See Hurt v. Coyne Cylinder Co.,* 956 F.2d 1319, 1323 (6th Cir.1992). The HMTA and its accompanying regulations are intended to regulate the shipment or transport of hazardous materials in intrastate, interstate, and foreign commerce. *Id.; see also* 49 App. U.S.C. § 1804 (1988). In a hypertechnical sense, Olson "transported" hazardous materials when he picked up the fifteen gallon drum of Sure Klean 600 and set it on the pallet. The construction of any statute, however, must be reasonably, sensibly, and fairly made with a view of carrying out the obvious intention of the legislature enacting it. *In re Estate of Keegan,* 369 N.W.2d 447, 450 (Iowa 1985). We do not believe Congress intended to regulate the kind of conduct at issue in this case. Other jurisdictions are in accord. *See Hurt,* 956 F.2d at 1323; *Kemner v. Monsanto Co.,* 217 Ill.App.3d 188, 160 Ill.Dec. 192, 206, 576 N.E.2d 1146, 1160 (1991); *Sawash v. Suburban Welders Supply Co.,* 407 Mass. 311, 553 N.E.2d 894, 898 (1990).

We have considered all of the arguments and issues raised by Prosoco in this appeal. No reversible error has occurred. The judgment entered by the trial court is affirmed.

**AFFIRMED.**