# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2307

_____

Michael McGuire, Individually and as    *
Natural Father and Next Friend of    *
Colleen McGuire, a Minor; Elaine    *
McGuire,    *
   *
       Plaintiffs–Appellees,    *
   *
       v.    *    Appeal from the United States
   *    District Court for the Northern
Davidson Manufacturing Corporation,    *    District of Iowa.
   *
       Defendant,    *
   *
Louisville Ladder Group LLC,    *
   *
       Defendant–Appellant.    *
   *

_____

Submitted: February 19, 2004
Filed: February 17, 2005

_____

Before RILEY, HANSEN, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Michael McGuire ("McGuire") sustained serious injuries when he fell from a ladder manufactured by Davidson Manufacturing, predecessor to Louisville Ladder

Group LLC ("Louisville Ladder").  McGuire filed suit, alleging several tort claims against Louisville Ladder.  The jury returned a verdict for McGuire and the district court[1] awarded damages of $311,838.57.  Louisville Ladder appeals.  We affirm.

## I.  BACKGROUND

On September 5, 1999, McGuire fell from a six-foot stepladder and was seriously injured.  The cause of the fall is contested by the parties.  McGuire contends that one of the side rails of the ladder suddenly fractured, causing him to fall and strike his head on the concrete floor.  Louisville Ladder argues that McGuire tilted the ladder onto two legs and fell off the ladder.  Louisville Ladder contends that the breaks in the side rails were caused by McGuire landing on top of the ladder after he fell.  There was no eyewitness as to the cause of the accident, and due to his injuries, McGuire has no memory of his fall.  McGuire's son-in-law, Ken Hajek, was leaving the room at the time of the fall and testified that he turned around in time to see McGuire's head strike the floor.  According to Hajek, McGuire hit the floor directly, without landing on top of the ladder.

McGuire, as well as McGuire's wife and minor daughter, sued Louisville Ladder and Emerson Electric in Iowa state court.  Plaintiffs sought to recover under design defect, manufacturing defect, and general negligence theories.  Defendants removed the case to federal court.  The parties subsequently stipulated to the dismissal of Emerson Electric.

In response to special interrogatories, the jury found that: (1) the ladder had a manufacturing defect, (2) the ladder did not contain a design defect, and (3) Louisville Ladder was at fault under a theory of general negligence, Iowa's version

---

[1] The Honorable Paul A. Zoss, United States Magistrate Judge for the Northern District of Iowa.

-2-

of res ipsa loquitur. However, the jury also found that Louisville Ladder had a complete defense to the manufacturing defect claim because it complied with the "state of the art" when manufacturing the ladder. The jury found both Louisville Ladder and McGuire were 50% responsible and assessed McGuire's damages at $623,677.14. The jury also awarded $48,000 in damages to McGuire's wife for loss of consortium. The district court discounted the awards for McGuire's comparative fault and awarded $311,838.57 in damages to McGuire and $24,000 in damages to McGuire's wife.

Louisville Ladder moved for judgment as a matter of law, arguing that McGuire failed to prove the accident was not caused by his own voluntary actions. Louisville Ladder contended that McGuire was required to satisfy the "voluntary action rule" by proving by a preponderance of the evidence that his actions did not cause the accident. Louisville Ladder argued that satisfying the voluntary action rule was a required element of a successful general negligence claim under Iowa law. The district court denied the motion.

Louisville Ladder also filed a post-trial motion to amend the judgment pursuant to Rule 59(e). In that motion, Louisville Ladder argued that the jury's finding that Louisville Ladder had complied with the "state of the art" should release the company from liability on the general negligence claim. The district court found the "state of the art" defense applied to the manufacturing defect claim only and denied the motion.

## II. ANALYSIS

On appeal, Louisville Ladder argues, first, that the district court erred in denying its motion for judgment as a matter of law. Louisville Ladder contends that a plaintiff must satisfy the "voluntary action rule" to prevail on a res ipsa loquitur, or general negligence, claim under Iowa law. Second, Louisville Ladder contends that

the district court erred in denying its Rule 59(e) motion because if Louisville Ladder conformed to the state of the art, it could not have been negligent.

### A.     Res Ipsa Loquitur and the Voluntary Action Rule

We review a district court's interpretation of state law de novo.  Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).  "'If state law is unsettled, it is our duty to apply the rule we believe the [Iowa] Supreme Court would follow.'"  Thomas v. Union Pacific R.R. Co., 308 F.3d 891, 894 (8th Cir. 2002) (quoting Novak v. Navistar Int'l Transp. Corp., 46 F.3d 844, 847 (8th Cir. 1995)).  "We review the district court's denial of a motion for judgment as a matter of law de novo, applying the same standard as the district court."  Cardenas v. AT&T Corp., 245 F.3d 994, 998 (8th Cir. 2001). We must view the "evidence in the light most favorable to the verdict and reverse only if no reasonable jury could have returned a verdict for the non-moving party."  Id.

Prior to 1984, Iowa used a contributory fault system, in which any fault on the part of the plaintiff in causing the injury barred recovery.  To prevail on a claim using res ipsa loquitur under that system, a plaintiff  needed to show: (1) "the instrumentality causing the injury was under the exclusive control . . . of the defendant," or if the defendant did not have exclusive control of the instrumentality, that "there was no change in the condition of the instrumentality after it left defendant's control which could reasonably have caused the injury," (2) "the accident was one that would not, in the ordinary course of events, happen without negligence," and (3) "the injury [was] caused without the fault of the injured party."  Sweet v. Swangel, 166 N.W.2d 776, 778 (Iowa 1969).  A plaintiff was required to prove he or she was not at fault by a preponderance of the evidence.  Id.  Plaintiffs could "meet this burden by showing [they] ha[d] done nothing abnormal with the instrumentality causing the injury and ha[d] used it in the manner and for the purpose for which it was intended."  Id.

-4-

Iowa adopted a comparative fault system in 1984 in the Comparative Fault Act, codified in chapter 668 of the Iowa Code. The Act provides:

> Contributory fault shall not bar recovery in an action by a claimant to recover damages for fault resulting in death or in injury to person or property unless the claimant bears a greater percentage of fault than the combined percentage of fault attributed to the defendants, third-party defendants and persons who have been released . . . , but any damages allowed shall be diminished in proportion to the amount of fault attributable to the claimant.

Iowa Code § 668.3(1)(a).

The Iowa Supreme Court has not expressly addressed the issue of whether a plaintiff employing res ipsa loquitur must still prove he or she was not at fault under Iowa's comparative fault system. The majority of states that have considered the question have concluded that the voluntary action rule no longer applies in their states after the adoption of a comparative fault scheme. See, e.g., Cox v. May Department Store Co., 903 P.2d 1119, 1124 (Ariz. Ct. App. 1995) (concluding plaintiff need not show accident not caused by plaintiff's voluntary action and listing like decisions from other states); Giles v. City of New Haven, 636 A.2d 1335, 1341-42 (Conn. 1994) (same); Montgomery Elevator Co. v. Gordon, 619 P.2d 66, 70 (Colo. 1980) (concluding plaintiff need not show accident not caused by plaintiff's voluntary action) ; Darrough v. Glendale Heights Comm. Hosp., 600 N.E.2d 1248, 1253 (Ill. App. Ct. 1992) (same); Tipton v. Texaco, Inc., 712 P.2d 1351, 1359 (N.M. 1985) (same); Turtenwald v. Aetna Casualty & Surety Co., 201 N.W.2d 1, 4-5 (Wis. 1972) (same).

Eliminating the plaintiff's burden to disprove his or her own fault comports with the spirit of a comparative negligence scheme. As stated by the Arizona Court of Appeals:

The third element of *res ipsa loquitur* [that the accident not be due to any voluntary action on the part of the plaintiff] corresponds to the common law theory of contributory negligence. The purpose of comparative negligence, however, is to eliminate the harshness that results from the complete bar to recovery under contributory negligence. Were we to retain the requirement that plaintiff be entirely free from fault in order to benefit from *res ipsa loquitur*, we would contravene the intent of the comparative fault statute. *Res ipsa loquitur* would then act as a complete bar to recovery for a plaintiff whose negligence was only minimally responsible for her injuries, rather than permitting the apportionment of fault mandated by [the Arizona comparative fault statute].

Cox, 903 P.2d at 1124 (internal citations omitted). We find this reasoning sound and believe that when the Iowa Supreme Court addresses the issue it, like many other high courts, will find that in a comparative negligence system, plaintiffs using res ipsa loquitur need not disprove their own fault in order to prevail.

In addition to the weight of case law from other states, Iowa Supreme Court cases lend support for the view that a plaintiff need not disprove his or her own fault. Recent Iowa Supreme Court cases list only two requirements for applying res ipsa loquitur:

The doctrine of res ipsa loquitur is a rule of evidence that permits an inference that the defendant was negligent. Two elements must be present for the doctrine to apply: (1) the injury is caused by an instrumentality under the exclusive control of the defendant, and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used. A party must produce substantial evidence of both elements to be entitled to an instruction on general negligence under the res ipsa loquitur doctrine.

Graber v. City of Ankeny, 616 N.W.2d 633, 643 (Iowa 2000) (internal quotations and citations omitted). For similar statements of law, see also Novak Heating & Air

-6-

Conditioning v. Carrier Corp., 622 N.W.2d 495, 498 (Iowa 2001); Brewster v. United States, 542 N.W.2d 524, 529 (Iowa 1996); Mastland, Inc. v. Evans Furniture, Inc., 498 N.W.2d 682, 686 (Iowa 1993). The listing of two elements is in contrast to Iowa Supreme Court statements of law pre-dating Iowa's adoption of comparative fault, which did require plaintiffs to prove that their injury was not caused by their own voluntary action. See Sweet, 166 N.W.2d at 778.

B.     General Negligence and the State of the Art Defense

As stated above, the jury found that Louisville Ladder was at fault on the plaintiffs' general negligence claim, as well as the plaintiffs' manufacturing defect claim. However, it found that Louisville Ladder had a complete defense to the manufacturing defect claim because it complied with the state of the art. Louisville Ladder argued for the first time in its Rule 59(e) Motion to Reconsider that the jury's findings regarding the state of the art defense and liability for general negligence were inconsistent and that the negligence finding must therefore be disregarded. We find this argument is waived because it was not raised until the Rule 59(e) Motion to Reconsider.

The Federal Rule of Civil Procedure addressing waiver effective at the time of trial reads: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51 (2003); See also Top of Iowa Coop. v. Schewe, 149 F. Supp. 2d 709, 728 (N.D. Iowa 2001). "'If a party feels that a jury verdict is inconsistent, it must object to the asserted inconsistency and move for resubmission of the inconsistent verdict before the jury is discharged or the party's right to seek a new trial is waived.'" Doe v. Washington County, 150 F.3d 920, 924 (8th Cir. 1998) (quoting Parrish v. Luckie, 963 F.2d 201, 207 (8th Cir. 1992)); see also Dairy Farmers of America, Inc. v. Travelers Ins. Co., 391 F.3d 936, 945 (8th Cir. 2004).

Rule 51 applies to jury verdict forms. Smith v. Updegraff, 744 F.2d 1354, 1367 (8th Cir. 1984) ("We believe Rule 51 was intended to encompass jury verdict forms and find no compelling reason to decide otherwise.").

When a party fails to object to the format of the jury verdict form, we review only for plain error. Life Plus Int'l v. Brown, 317 F.3d 799, 805 (8th Cir. 2003). "'Any plain error exception to Fed. R. Civ. P. 51 is confined to the exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" Id. (quoting Arnott v. Am. Oil Co., 609 F.2d 873, 889 (8th Cir. 1979) (internal quotation omitted)). For us to reverse for plain error, the judgment below "must result in a miscarriage of justice." Id.

Here, Louisville Ladder failed to object to the form of the jury instructions, so we review for plain error. We find that the judgment below does not approach plain error. We find no authority in Iowa law that precludes a finding that a party has conformed with the state of the art and yet is liable under general negligence.

The applicable state-of-the-art defense statute[2] reads:

> In any action brought pursuant to this chapter against an assembler, designer, supplier of specifications, distributor, manufacturer or seller for damages arising from an alleged defect in the design, testing, manufacturing, formulation, packaging, warning, or labeling of a product, a percentage of fault shall not be assigned to such persons if they plead and prove that the product conformed to the state of the art in existence at the time the product was designed, tested, manufactured, formulated, packaged, provided with a warning, or labeled.

---

[2] The Iowa Legislature amended Iowa Code § 668.12 on April 8, 2004 to include additional language regarding failure to warn and defects in packaging, warning, or labeling. 2004 Iowa Legis. Serv. 2170 (West).

-8-

I.C.A. § 668.12.  "Section 668.12 is a complete defense in product defect cases." Olson v. Prosoco, Inc., 522 N.W.2d 284, 290 (Iowa 1994).  However, its application to general negligence has not been addressed by the Iowa courts.  We believe that, if the Iowa Supreme Court were to consider the question, it would likely find that proof of the state-of-the-art defense does not automatically exonerate a defendant from liability for general negligence.

There are two major reasons for this conclusion.  First, the statute makes no mention of negligence.  This omission is in contrast to otherwise similar state-of-the-art defense statutes in other states which mention claims involving negligence as well as those involving defective products.  See, e.g., Neb. Rev. Stat. § 25-21, 182. Second, the Supreme Court of Iowa declined to apply the statute in negligent failure to warn cases.  See, e.g., Olson, 522 N.W.2d at 291.  The court reasoned that in failure to warn claims, "the focus is on the conduct of the defendant, not the condition of the product."  Id.  "Section 668.12, on the other hand, provides a state-of-the-art defense for product defects," which concern the condition of the product.  Id.  The court concluded: "Thus, the state-of-the-art defense provided by section 668.12 is incongruous when applied to claims based on negligent failure to warn."[3]  Id.  The court instructed:

> We note this does not preclude defendants from presenting state-of-the-art evidence at trial.  However, rather than establishing an absolute defense in negligent failure to warn cases, defendant's evidence would go to rebut the plaintiff's proof that the defendant breached a duty to

[3] Louisville Ladder correctly points out that the Supreme Court of Iowa has applied the state-of-the-art defense in a negligent design case.  Hughes v. Massey-Ferguson, Inc., 522 N.W.2d 294 (Iowa 1994).  However, in that case, "Hughes did not challenge the applicability of section 668.12 to *negligent* design cases."  Id. at 298 n.1 (Ternus, J., concurring).  Because the question was not directly before the court, we consider the applicability of the state-of-the-art defense to negligent design claims an open question under Iowa law.

exercise the degree of care a reasonable manufacturer would have used in light of generally recognized and prevailing scientific knowledge.

Id.

We believe the reasoning in Olson applies equally well to the general negligence claim at hand. The state-of-the-art defense as written applies to product defect claims, in which liability arises from the condition of the product. In general negligence claims, on the other hand, liability arises from the conduct of the defendant. Further, the difference between the two types of claims supports our belief that if the Iowa legislature had meant to include negligence, it would have said so in the statute.

For the purposes of our decision, we need not resolve how the Iowa Supreme Court envisions the interplay between general negligence and the state-of-the-art defense. Plain error requires that the unobjected to jury instruction first be erroneous. As indicated, the Iowa Supreme Court has not directly addressed this issue. For the reasons stated, we doubt the Iowa Supreme Court would adopt Louisville Ladder's view of Iowa law on the negligence and the state of the art defense. More importantly, however, even if there is error, clear error analysis requires us to find the error seriously affects the fairness, integrity and public reputation of the judicial proceeding. The giving of a jury instruction that is not objected to on an unsettled area of state law does not rise to that high standard of seriously affecting the integrity of the judicial proceeding. Accordingly, we find no clear error in the giving of the instruction.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

_____