**Raymond F. WEHNER, et al., Plaintiffs,**

v.

**SYNTEX CORPORATION and Syntex (U.S.A.) Inc., Defendants.**

No. C–85–20383–SW.

United States District Court, N.D. California, San Jose Division.

April 17, 1987.

Timothy Fine, San Francisco, Cal., Arnold Levin, Philadelphia, Pa., Constantine G. Pulos, Donald L. Schlapprizzi, St. Louis, Mo., John G. Tyndall, San Jose, Cal., for plaintiffs.

Lewis T. Booker, Hunton & Williams, Richmond, Va., M. Scott Donahey, Holtzmann, Wise & Shepard, Palo Alto, Cal., for defendants.

SPENCER WILLIAMS, District Judge.

On January 28, 1987, this matter came before the court on plaintiffs' motion for class certification. Upon completion of oral argument, the court took the matter under submission.

This action to recover "response costs" pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. sections 9601, *et seq.* (Hereinafter referred to as "CERCLA") arises out of the well publicized dioxin contamination of Times Beach, Missouri. Plaintiffs contend that they were damaged by dioxin contamination which was produced between 1969 and 1971 by a facility in Verona, Missouri. It is alleged that Syntex Agribusiness, Inc., is responsible for the dioxin contamination. Syntex Agribusiness, Inc., is a wholly owned subsidiary of defendant Syntex (U.S.A.) Inc., the stock of which in turn is wholly owned by defendant Syntex Corporation. By virtue of the sole ownership, it is alleged that Syntex Corporation and Syntex U.S.A. are liable for the acts of Syntex Agribusiness.

On December 20, 1985, Judge Ingram of this District denied defendants' Motion for Summary Judgment. Judge Ingram noted that in order for defendant Syntex Corporation to be liable for the alleged dioxin contamination, the alter ego doctrine must apply. However, Syntex Corporation itself owns no property or assets in the state of Missouri. Judge Ingram concluded that the issue as to whether or not Syntex Corporation should have the alter ego doctrine applied against it is one properly for the trier of fact.

## CERTIFICATION OF PLAINTIFF CLASS

Before a class action may be maintained under Rule 23, the action must meet the prerequisites of Federal Rule 23(a) and one set of the alternate requirements of Federal Rule 23(b). *In re Northern Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847 (9th Cir.1982), *cert. den., A.H. Robins Co. v. Abed,* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983) [citations omitted].

Rule 23(a) mandates that the following requirements be met before one or more members of a class may sue or be sued as a representative party. One, that the class is so numerous that joinder of all members is impracticable; two, that there are common questions of law and fact; three, that the claims and defenses of the parties are typical of one another; and four, that the representative parties will represent the interests of the class. While the court notes that all of the allegations in plaintiffs' complaint must be taken as true for purposes of a class certification motion, so too must there be facts sufficient to form a reasonable judgment for each of the requirements of Federal Rule 23(a), *Blackie v. Barrack,* 524 F.2d 891, 900–01 (9th Cir.1975), *cert. den.,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976) [citations omitted].

A. Numerosity

■ Plaintiffs' Reply Memorandum proposes a class which would include

[a]ll persons who during the period 1971 to the present reside or resided, own or owned real property in "confirmed dioxin sites" as described in the Final Report of the Missouri Dioxin Task Force, October 31, 1983, excluding the defendants, Russell Bliss, their agents, employees, corporate affiliates, assigness, and members of the immediate family of Russell Bliss.

To the extent that such a class could number in the thousands, the numerosity requirement is presumptively satisfied. While not impossible, joinder would clearly be impracticable. Further, the court concludes that such a description represents a readily ascertainable class. The Missouri Dioxin Task Force Report will set forth

specific sites which have confirmed dioxin contamination. Therefore, the exact size of the class is ascertainable following discovery of the infected areas. However, the court refrains from ruling on the validity of the "confirmed dioxin sites" since such sites have not necessarily been contaminated by defendants' alleged acts. Accordingly, some members of the proposed class may not be appropriate plaintiffs and may be severed out upon defendants' motion.

## B. Commonality

As stated in defendants' Memorandum in Opposition to Class Certification,

> Rule 23(a) does not require that every question of law or fact be common to every member of the class. The commonality requirement is satisifed "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically suited."

Citing *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1320 (9th Cir.1982), *on remand, Jordan v. County of Los Angeles*, 713 F.2d 503 (9th Cir.1983).

Plaintiffs' burden of meeting the requirement of Rule 23(a)(2) is fulfilled by showing a single issue common to all members of that class. Proof pertaining to the nature of the dioxin represents such a common issue. While a single common material question will not definitively satisfy the requirements of 23(a)(2), to the extent that other circumstances demonstrate a need for unitary adjudication, such as the geographic disparity of the class, a single common question will support class certification for purposes of Rule 23(a)(2). See, 3 H. Newberg, *Newberg on Class Actions*, section 1110(a), (1977). The court notes that the requirements of Rule 23 (a)(2) are less stringent than those in Rule 23(b)(3). Rule 23(a)(2) requires only a showing of a common question. Rule 23(b)(3) requires that those common issues predominate over the individual ones. Rule 23((b)(2) will be discussed at greater length below.

Therefore, the court concludes that a common question of fact is presented in plaintiffs' complaint as to the nature of the dioxin. Also, because plaintiffs seek to recover "response costs", there also exists a common question of law as to the scope of response costs under 42 U.S.C. section 9601(23), (24).

## C. Typicality

The typicality requirement of Rule 23 refers to the nature of the claim and not to the specific facts from which it arose. Factual differences are acceptable provided the claim arises from the same event or course of conduct and is based on the same legal theory. *Thomas v. Clarke*, 54 F.R.D. 245 (1971). Plaintiffs in this case are seeking response costs for alleged dioxin contamination. Plaintiffs allege negligence in the manufacture, transporation and storage of dioxin by defendants during the time period stated above. Therefore, all of the claims are presumably based on a course of conduct by defendants which would properly satisfy Rule 23(a)(3). The court notes a necessary overlap of the provisions of Rule 23. If a court determines that a plaintiff's claim is typical of the class, then by implication, the court has necessarily determined that common questions exist. The converse is also true.

## D. Adequacy

The basic thrust of Rule 23(a)(4) is whether or not the putative class of plaintiffs will fairly and adequately protect the interests of those whom they claim to represent. Courts are commonly faced with two factors to consider. First, that the class is assured vigorous prosecution, and second, that there is an absence of conflict. See *In re Gap Stores Securities Litigation*, 79 F.R.D. 283, 303 (1978). It is presumed plaintiffs' counsel is competent to litigate this case and will fairly and adequately represent the interests of the class members. Class members seemingly possess some financial stake in the proceedings such that there would be an absence of antagonistic feelings between class members. While plaintiffs admittedly have suffered differing degrees of damage from the alleged dioxin contamination,

this circuit has nonetheless held that the adequacy and fairness of representation must be judged "in light of the the seriousness and extent of conflicts involved compared to the importance of issues uniting the class ..." *Blackie v. Barrack,* 524 F.2d at 910. While the court fails to find any presumed conflicts other than those articulated herein, it is not in a position to rule that none exist. In the instant case, any conflicts that may be presently discovered will likely pale in comparison to the issues unifying the class.

### E. Predominance and Superiority

Rule 23(b) requires the court to find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." *In re Gap Stores Securitites Litigation,* 79 F.R.D. at 305. The court concludes that a common question exists as to whether the defendants were negligent in the manufacture, transportation, and distribution of the dioxin in Missouri. Individual issues include the amount of damages each plaintiff has sustained and the issue of causation as to each plaintiff.

Significant judicial economies are served by trying the common issues discussed above. However, this court recognizes that those individual issues alluded to above are still ripe for separate adjudication.

As stated earlier, the court is also required to find that a class action suit is a superior medium for adjudication. *In re Gap Stores Securities Litigation,* 79 F.R.D. at 305. Rule 23(b)(3) lists four factors which the draftsmen have found to be particularly significant. These factors, stated in the Federal Rules, have been enumerated in numerous cases and treatises and in the interests of brevity will not be quoted here. The crux of these factors is to focus the court on the efficiency and economic elements of a class action suit such that suits brought under Rule 23(b)(3) can be adjudicated most economically on a representative basis. See 7A Wright & Miller, *Federal Practice and Procedure: Civil* Section 1780, (1972). In practical terms, plaintiffs in the instant case may be economically precluded from bringing seperate suits and thus be barred access to the judicial system. Maintenance of a class action suit would provide all litigants with their "day in court" without overburdening the judicial system with a multiplicity of lawsuits.

Problems that exist with maintaining a Rule 23(b)(3) class include whether or not each plaintiff was actually injured by the alleged dioxin contamination, thereby incurring response costs contemplated by CERCLA, and whether the injury can be readily traced to defendants conduct. In the instant case, should any of these situations be found, then the plaintiff and/or defendant may be readily severed.

The last and most significant problem posed with a Rule 23(b)(3) class is the individual class members' right to opt-out via Rule 23(c)(2)(a). The due process requirements of Rule 23(c)(2) requires this court to give notice to each absentee that (1) he will be excluded from the class if he so requests by a specified date; (2) that the judgment, whether favorable or not, will include him if he does not request to be omitted from the class; and (3) that if he does not opt-out he may enter an appearance through his counsel. See generally *In re Gypsum Antitrust Cases,* 565 F.2d 1123 (9th Cir.1977). This court orders plaintiffs to provide notice to all plaintiffs reasonably identifiable following the ascertainment of the confirmed dioxin sites pursuant to this order.

Upon consideration, this court concludes that under the circumstances of the case at bar pertaining to the questions of law and fact common to the class and based on the findings herein, plaintiffs' motion for class certification is hereby GRANTED.

A status conference will be held immediately after defendants' Motion to Stay is heard.

IT IS SO ORDERED.