### In re METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION

Nos. 1:00 1898, MDL 1358 SAS, M 21–88.

United States District Court,
S.D. New York.

Jan. 3, 2007.

Peter John Sacripanti, James A. Pardo, Stephen J. Riccardulli, McDermott, Will & Emery LLP, New York City, for Defendants.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

In November 1988, a pipeline transporting petroleum products from Texas to Illinois released thousands of gallons of gasoline onto a property known as Danhausen Farm in Limestone Township, Kankakee County, Illinois.[1] "A pool of gasoline about 450 feet by 50 feet appeared among fields of corn and soybeans," according to the Illinois Environmental Protection Agency.[2]

The gasoline contained a number of additives including MTBE (methyl tertiary butyl ether), various byproducts, and BTEX (benzene, toluene, ethylbenzene, and xylenes).[3] An information packet published by the Illinois Environmental Protection Agency in 2002 explains:

> The geology within the release area consists of a six to eight foot layer of loess and Silurian age Racine dolomite. The upper 15 feet of the dolomite in this area is highly fractured permitting contaminants to seep into the bedrock aquifer that provides drinking water for many homes in the area. The groundwater in this area is moving towards the Kankakee River.[4]

Thirteen years after the release, residents and property owners from Limestone Township filed this action against Shell Oil Company and certain companies involved with the

Michael Axline, Tracy O'Reilly, Miller, Axline & Sawyer, Sacramento, CA, for Edith Quick et al.

Robin Greenwald, Robert Gordon, C. Sanders McNew, Weitz & Luxenberg, P.C., New York City, for Plaintiffs.

---

**1.** *See* Third Amended Class Action Complaint ("Compl.") ¶¶ 2, 7, 8; *see also* Illinois Environmental Protection Agency, "Information Packet, Shell Pipeline Release, Limestone Township, Kankakee County" (Sept.2002) ("EPA Info. Packet"), Ex. A3 to Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Def.Mem.") at 1.

**2.** EPA Info. Packet at 1. The United States Environmental Protection Agency may have found that MTBE is a "likely" cause of cancer in humans such as leukemia and lymphoma, although this conclusion has not yet received official agency approval. *See* Environmental Working Group, "EPA Draft Says MTBE A 'Likely' Cause

of Cancer" (July 11, 2005), Ex. 13 to Plaintiffs' Tender of Evidence Supporting Class Certification ("Pl.Evid."), at 1; Senator Diane Feinstein, "21 Senators Urge EPA to Report on MTBE–Cancer Link" (July 21, 2005), Ex. 14 to Pl. Evid. at 1 ("It has recently come to our attention that the Environmental Protection Agency (EPA) is circulating for internal review a draft risk study that may conclude that MTBE (methyl-tertiary-butyl-ether) is a 'likely' human carcinogen. This is extremely troubling and certainly warrants further investigation and review.").

**3.** *See* Compl. ¶ 7; *see also* EPA Info. Packet at 1.

**4.** EPA Info. Packet at 1.

pipeline ("Companies").[5] The individual plaintiffs include: (1) Edith Quick, (2) Lisa and Carl Kibbons and their son Evan, (3) Edith and Gregory Buckley and their daughter Ellen, (4) Lisa and Jeffrey Quick, (5) Cathy and Charles Quick (Jr.), (6) John Panozzo, the guardian of Marguerite Panozzo, (7) Angela and Christopher Burge, and (8) Kenneth Clark.[6] These individual plaintiffs allege that the Companies are liable for the torts of (1) trespass, (2) private nuisance, (3) negligence, and (4) defective product design of MTBE and its byproducts.[7] In addition, the individual plaintiffs sued the company that tested water samples in the area in the years after the spill, Parsons Engineering Science, Inc., as well as two of its employees (the "Parson Defendants").[8]

Two of these individual plaintiffs, John Panozzo and Lisa Kibbons ("Plaintiffs"), now move under Rule 23 of the Federal Rules of Civil Procedure to represent three subclasses of people who were harmed by the alleged torts committed by the Companies and the Parson Defendants (collectively referred to as "Defendants"). In particular, Plaintiffs seek certification of three subclasses to include people who were harmed after January 1, 1988, because:

(1) their real property was contaminated by gasoline from the pipeline release resulting in the loss of market value or quiet enjoyment of the property (subclass one);

(2) their wells and other sources of water were contaminated by gasoline from the pipeline release resulting in expenses associated with procuring uncontaminated water including the cost of connecting to a public or commercial source of uncontaminated water (subclass two);

(3) they were exposed to gasoline contamination from the pipeline resulting in personal injury, or an increased risk of personal injury, including cancer (subclass three).[9]

It is well-established that a court has the inherent power and discretion "to redefine and modify a class in a way which allows maintenance of an action as a class action." [10] Plaintiffs' proposed three subclasses warranted modification because they are too broad. In particular, the Companies and the Parson Defendants cannot be part of the same class definition because the question of whether the Companies are liable for their alleged torts arising out of the gasoline spill (trespass, private nuisance, negligence, and

---

**5.** The Complaint also names as defendants Shell Pipe Line Corporation and Equilon Pipe Line Company, LLC. According to the Complaint, "Shell Oil directed or controlled the policies and management of Shell Pipe Line, including but not limited to the sale of the assets of Shell Pipe Line to Equilon Pipe Line Company ... at some time after 1999." Compl. ¶ 3.

**6.** *See id.* ¶¶ 16, 31, 35, 40.

**7.** While the Complaint also alleges a claim of "res ipsa loquitur," *see, e.g., id.* ¶¶ 88–92, this is only an evidentiary method of proving negligence. As one Illinois appellate court explained: "Because Illinois requires fact pleading, res ipsa loquitur is often pleaded as a separate claim and, therefore, has sometimes been referred to as a cause of action. Nevertheless, res ipsa loquitur is simply a rule of evidence relating to the sufficiency of plaintiff's proof. The determination of whether res ipsa loquitur applies is a question of law...." *Darrough v. Glendale Heights Comm. Hosp.,* 234 Ill.App.3d 1055, 1060, 175 Ill.Dec. 790, 600 N.E.2d 1248 (1992); *see also Metz v. Central Ill. Elec. & Gas Co.,* 32 Ill.2d 446, 448–49, 207 N.E.2d 305 (1965) (explaining that the purpose of res ipsa loquitur "is to allow proof of

negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant"). Thus, while Plaintiffs may argue that the release of gasoline from a pipeline is the type of act that warrants a presumption of negligence either at summary judgment or trial, there is no independent claim of res ipsa loquitur.

**8.** *See, e.g.,* Compl. ¶¶ 81–87 (Edith Quick's negligence claim against the Parson Defendants).

**9.** *See id.* ¶ 252 (defining three subclasses); *see also* Plaintiffs' Motion for Class Certification at 2 (same).

**10.** *Doulin v. City of Chicago,* 662 F.Supp. 318, 336 (N.D.Ill.1986) (citing *Lively v. Cullinane,* 451 F.Supp. 1000, 1006 (D.D.C.1978)); *see also Shvartsman v. Apfel,* 138 F.3d 1196, 1201 (7th Cir.1998) (affirming the trial court's decision to limit or redefine the class submitted by plaintiffs); Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7B *Federal Practice and Procedure* § 1760 at 127–28 (2d ed.1998) (citing cases).

strict liability) is different than the question of whether the Parson Defendants are liable for the tort of negligence in testing water at various people's property after the spill. Because the only way to maintain the action as a class action is to modify the proposed class, the Court will redefine the classes so that the Companies and the Parson Defendants are considered separately.

## II. THE LAW OF THE TRANSFEROR COURT APPLIES TO CLASS CERTIFICATION IN MULTI–DISTRICT LITIGATION

A threshold question that must be addressed is whether the law of the transferor circuit should control when applying Rule 23 (*i.e.*, Seventh Circuit) or, in the alternative, the law of the transferee circuit (*i.e.*, Second Circuit).[11] As explained below, the law of the transferor circuit applies to this motion for class certification under Rule 23.

This case was transferred to this Court pursuant to 28 U.S.C. § 1407, which states in pertinent part: "When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings."[12] "The plain language of the statute does not explicitly resolve the issue of which circuit's law is binding, but it is important that section 1407 only allows cases to be transferred on the condition that such coordination 'will promote the just and efficient conduct of such actions.'"[13]

In the context of pre-trial issues such as motions to dismiss or discovery disputes, section 1407 requires the application of the law of the transferee circuit where the motions are being considered.[14] For example, courts have held that the law of the transferee circuit controls pretrial issues such as whether the court has subject matter or personal jurisdiction over the action, or whether the cases should be remanded to state court because the cases were not properly removed.[15] Likewise, the law of the transferee circuit controls discovery issues such as whether to compel a deposition or documents pursuant to a subpoena.[16]

The law of the transferee circuit applies in each of these situations because the "objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation costs, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."[17] Section 1407 is aimed at eliminating "delay, confusion, conflict, inordinate expense and inefficiency" during the pretrial period.[18] In other words, it promotes "just and efficient" resolution of the proceedings to apply the law of the transferee circuit to pretrial issues.[19]

However, whether to certify an action on behalf of a class under Rule 23 is not merely a pretrial issue. In *Coopers & Lybrand v. Livesay*,[20] the Supreme Court first observed that "the class determination generally involves considerations that are enmeshed in

**11.** *See* Transcript of 10/11/06 Oral Argument at 49–50.

**12.** 28 U.S.C. § 1407(a).

**13.** *In re MTBE Prods. Liab. Litig.*, No. M21–88, MDL 1358, 2005 WL 106936, at *5 (S.D.N.Y. Jan.18, 2005) (quoting 28 U.S.C. § 1407).

**14.** *See id.*

**15.** *See In re Linerboard Antitrust Litig.*, No. 04 Civ. 4001, MDL 1261, 2005 WL 1625040 (E.D.Pa. July 11, 2005) (applying the law of the Third Circuit on a motion to dismiss for lack of subject matter jurisdiction); *In re MTBE Prods. Liab. Litig.*, 2005 WL 106936, at *5 (applying the law of the Second Circuit on a motion to dismiss for lack of personal jurisdiction); *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 256 F.Supp.2d 884 (S.D.Ind.2003) (applying the law of the Seventh Circuit on a motion for remand to state court).

**16.** *See In re Auto. Refinishing Paint*, 229 F.R.D. 482, 486 (E.D.Pa.2005).

**17.** *Manual for Complex Litigation* § 20.131, at 220 (4th ed.2004).

**18.** *In re Plumbing Fixture Cases*, 298 F.Supp. 484, 491–92 (J.P.M.L.1968) (discussing legislative history of statute).

**19.** *In re MTBE Prods. Liab. Litig.*, 2005 WL 106936, at *5 (quoting 28 U.S.C. § 1407).

**20.** 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

the factual and legal issues comprising the plaintiff's cause of action." [21] The Court repeated this observation four years later in *General Telephone Company of Southwest v. Falcon.*[22]

More importantly, in *Amchem Products, Inc. v. Windsor,*[23] the Supreme Court held that when certifying a class action under Rule 23, the requirements of Rule 23(b)(3) must always be satisfied *for purposes of the trial* regardless of whether a jury will consider the case because the parties have settled. In *Amchem,* the Supreme Court held that, with one exception, a proposed settlement was irrelevant to determining whether a class should be certified under Rules 23(a) and 23(b)(3). "Settlement is relevant to a class certification" *only* because a district court "need not inquire whether the case, if tried, would present intractable management problems ... for the proposal is that there be no trial." [24]

At the same time, the Supreme Court emphasized that "other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." [25] Thus, courts must determine whether Rule 23 is satisfied for purposes of trial before granting certification.[26]

Not only are class certification requirements inherently enmeshed with considerations of the trial, but under *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,*[27]

the authority of the transferee court in multidistrict proceedings ends once the pretrial proceedings are completed.[28] *Lexecon* requires this Court to return each case to its original district for trial after the pretrial phase has been completed. It would be neither just nor efficient to apply the law of this Circuit in considering class certification, and then force the transferor court to try a class action that it might never have certified.

Finally, Plaintiffs originally filed their state tort claims in Illinois state court.[29] Defendants removed the action to federal court under the federal officer removal statute and the case was then transferred to this Court by the Judicial Panel on Multidistrict Litigation.[30] In a similar context, the *Manual for Complex Litigation* explains:

> Complexities may arise where the rulings turn on questions of substantive law. In diversity cases, the law of the transferor district follows the case to the transferee district. Where the claim or defense arises under federal law, however, the transferee judge should consider whether to apply the law of the transferee circuit or that of the transferor court's circuit, keeping in mind that statutes of limitations may present unique problems.[31]

The case cited by the Manual for the statutes of limitations problem is *Berry Petroleum Co. v. Adams & Peck,*[32] in which the Second Circuit applied the law of the Fifth Circuit to determine if a suit has been timely brought. "Since this case was brought in a district

---

21. *Id.* at 469, 98 S.Ct. 2454 (internal quotation marks omitted).

22. 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

23. 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

24. *Id.* at 620, 117 S.Ct. 2231.

25. *Id.*

26. *See Amchem,* 521 U.S. at 625–28, 117 S.Ct. 2231 (overturning an opt-out class settlement under Rule 23(b)(3)); *see also Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 858, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (overturning a mandatory class settlement under Rule 23(b)(1)(B)) ("[T]he determination whether 'proposed classes are sufficiently cohesive to warrant adjudication' must

focus on 'questions that preexist any settlement.' ") (quoting *Amchem,* 521 U.S. at 622–23, 117 S.Ct. 2231).

27. 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998).

28. *See id.* at 40, 118 S.Ct. 956.

29. *See* 12/12/01 Complaint at Law, *Quick, et al. v. Shell Oil Co., et al.,* No. 01–L–147 (Ill. Cir. Kankakee County).

30. *See In re MTBE Prods. Liab. Litig.,* 399 F.Supp.2d 356, 359–61 (S.D.N.Y.2005).

31. *Manual for Complex Litigation* § 20.132, at 245 (4th ed.2004) (citations omitted).

32. 518 F.2d 402, 412 (2d Cir.1975).

court in the Fifth Circuit, the substantive law of that circuit is the law we must consider here." [33] Just as the statute of limitations encompassed questions of state substantive law, whether to certify a class involves issues pertaining to state substantive law. Neither party should be prejudiced in preparing for trial because the case was removed and transferred to another district in a different circuit.

Thus, in considering a motion for class certification of state claims under Rule 23, the law of the transferor circuit controls because that is the law that will bind the trial court and class certification is an issue on which the Supreme Court has directed courts to ensure that the requirements of Rule 23 are satisfied for purposes of trial. For pre-trial motions, it is appropriate to apply the law of the transferee court in order to avoid duplication, conflicting rulings and schedules, and increased litigation costs. But, in the context of class certification and other issues inherently enmeshed with the trial, applying the law of the transferor court "promote[s] the just and efficient conduct of such actions." [34]

## III. CLASS CERTIFICATION REQUIREMENTS

In order to maintain an action on behalf of a class, Plaintiffs must satisfy Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs must demonstrate that their proposed classes satisfy the four prerequisites of Rule 23(a), which are referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. [35]

Once these prerequisites are satisfied, Plaintiffs must show that the proposed classes are "maintainable" by fulfilling one of the three requirements of Rule 23(b). [36] In this case, Plaintiffs rely on Rule 23(b)(3) on the ground that common issues of law and fact "predominate over any questions affecting only individual members" and the class actions are "superior to other methods of adjudication." [37]

■ "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," [38] and courts subject a motion for class certification under Rule 23 to a "rigorous analysis" to ensure that its requirements are satisfied. [39] In the Seventh Circuit, this means that "[b]efore deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23." [40]

## IV. TWO OF PLAINTIFFS' SUBCLASSES SATISFY RULE 23

Of the four prerequisites that Plaintiffs must satisfy under Rule 23(a), Defendants argue that the Plaintiffs have failed to establish two of them: numerosity and typicality. [41]

---

**33.** *Id.* at 408 n. 7. *Berry* would later be deemed to be "of limited precedential value" after the Second Circuit held that "borrowed state limitations periods are incorporated into federal law" and thus the federal law of the Second Circuit applied. *Menowitz v. Brown,* 991 F.2d 36, 41 (2d Cir.1993). Nonetheless, *Berry* still requires that the substantive law of the transferor circuit be applied in the transferee court when addressing questions of substantive law. *Cf. Denney v. Deutsche Bank AG,* 443 F.3d 253, 275–76 (2d Cir.2006) (requiring the court to apply the substantive law "to be applied in all—or in each—of the jurisdictions that are likely to consider class members' claims" in a class certification).

**34.** *In re MTBE Prods. Liab. Litig.,* 2005 WL 106936 at *5 (quoting 28 U.S.C. § 1407) (quotation marks omitted).

**35.** *See Uhl v. Thoroughbred Tech. & Telecomms., Inc.,* 309 F.3d 978, 985 (7th Cir.2002).

**36.** *See Amchem,* 521 U.S. at 614, 117 S.Ct. 2231.

**37.** Fed.R.Civ.P. 23(b)(3).

**38.** *Coopers,* 437 U.S. at 469, 98 S.Ct. 2454.

**39.** *Falcon,* 457 U.S. at 161, 102 S.Ct. 2364.

**40.** *Szabo v. Bridgeport Mach., Inc.,* 249 F.3d 672, 676 (7th Cir.2001).

**41.** *See* Def. Mem. at 12–14, 21–23. While Defendants do not contest the commonality of the claims or adequacy of the class representatives, the Court will nonetheless address those elements briefly because Plaintiffs bear the burden of establishing each requirement for class certification. *See Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993) ("All of these elements are prerequisites to certification; failure to meet any one of these precludes certification as a class.").

In addition, Defendants argue that Plaintiffs have not demonstrated that their classes are maintainable under Rule 23(b)(3) because common issues do not predominate over individual issues of causation and damages (*i.e.,* establishing the harm caused to each individual member of the class) and a class action is not a superior method of adjudication.[42]

A careful review of Plaintiffs' proposed classes and the evidence submitted shows that the two subclasses involving damages to class members' property satisfy the requirements of Rule 23(a) and (b)(3) with respect to the alleged torts committed by the Companies. As explained below, courts have repeatedly recognized that such single-incident mass accidents are suitable for class-wide adjudication.[43] In this case, Plaintiffs' tort claims against the Companies arise out of a single release of gasoline prior to November 9, 1988. This is "a single accident, caused by a single or few actors who released the chemical within a specific geographic location" and thus warrants class treatment.[44]

However, the subclass involving personal injuries arising from exposure to MTBE cannot be certified because common issues do not predominate over individual issues related to proximate causation. Although courts will often certify classes involving claims arising out of a mass accident (such as a plane crash or a building collapse) in which causation may be proven on a class-wide basis, they typically will not certify a class involving claims that arise out of mass exposure to a toxic product or chemical because causation must be proven on an case-by-case basis.[45]

Finally, a class action may not be maintained against the Parson Defendants for their alleged negligence in the testing of various water sources after the spill over the course of many years. There is no single event, accident, or course of conduct underlying the claims: no set of facts will establish the liability of the Parson Defendants for negligence on a class-wide basis. Under such circumstances, a motion for class certification will generally be denied.[46]

## A. Numerosity

■ Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable."[47] "Impracticability does not mean impossibility, but instead requires plaintiffs to prove that it would be inconvenient and difficult to join all proposed members of the class."[48] "The court is not limited to considering merely the number of potential class members, but may make common-sense assumptions that support a finding of numerosity."[49]

Courts have repeatedly held that a putative class with more than forty members will presumptively satisfy this requirement.[50] Indeed, courts in the Seventh Circuit have held that a class with less than thirty members can still satisfy the numerosity requirement.[51] Finally, if Plaintiffs cannot provide

---

42. *See* Def. Mem. at 14–21, 23–25. Defendants submitted a half-page argument towards the end of their brief that the class representatives lack standing to bring their claims, *see id.* at 23, but this argument is easily dismissed. Each individual plaintiff has alleged an injury to his or her property or person that is " 'fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.' " *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

43. *See infra* Part IV.E.1.

44. *In re MTBE Prods. Liab. Litig.,* 209 F.R.D. 323, 349–50 (S.D.N.Y.2002).

45. *See infra* Part IV.E.2.

46. *See id.*

47. Fed.R.Civ.P. 23(a)(1).

48. *Bethards v. Bard Access Sys., Inc.,* No. 94 C 1522, 1995 WL 75356, at *3 (N.D.Ill. Feb.22, 1995).

49. *Patrykus v. Gomilla,* 121 F.R.D. 357, 360–61 (N.D.Ill.1988) (citing *Grossman v. Waste Mgmt., Inc.,* 100 F.R.D. 781, 785 (N.D.Ill.1984)).

50. *See* Herbert B. Newberg, *Newberg on Class Actions* § 3.05, at 141 (4th ed. 2002) ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable.").

51. *See Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 56 (N.D.Ill.1996) (certifying a class with eighteen members and citing cases with certified classes of thirteen and twenty members); *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986)

exact numbers of the proposed class, a good faith effort is sufficient to establish the number of class members.[52]

Defendants object that the proposed classes do not satisfy the numerosity requirement, but this argument is belied by the number of people affected by the gasoline release. "Approximately 2,100 people live within a 1 mile radius of the November 1998 release point."[53] "There are over 1,000 private wells in Limestone Township, according to the Illinois Water Survey"[54] and, as Defendants admit in their opposition papers, "483 residential wells have been sampled for gasoline constituents, most of which have been sampled multiple times."[55] Finally, when a public meeting was held in April 1994 by the Illinois Department of Public Health about the groundwater contamination, "about 400 people attended."[56]

Plaintiffs do not need to identify each person affected by the release of gasoline or pinpoint the exact number of people in the class. Indeed, it would be impossible for Plaintiffs to do so at this stage because such an identification will necessitate findings of fact that the jury must resolve (*e.g.*, where did the gasoline go after it was released?).[57] Nonetheless, the evidence before the court supports a finding that more than four hundred people might be members of each of the proposed subclasses.[58]

Because joinder of all the people who could bring claims against the Companies because of the gasoline spill would be impracticable, the numerosity requirement has been satisfied. Indeed, the crux of Defendants' argument with regard to numerosity seems to be that very few, if any, people were in fact harmed by the gasoline spill. For example, Defendants argue "the evidence is that Shell has connected [to a water source] almost all of the affected properties at Shell's expense.... Certification is unjustified and unnecessary."[59]

Defendants' arguments may turn out to be true: If Shell connected a property to an unaffected water source, this act may eliminate any damages to such property owners. Yet, the Court cannot make that determination without delving into the merits of the case, which it must avoid on a motion for class certification unless that determination is relevant to a Rule 23 requirement.[60] Determining the extent of the damages, or whether certain conduct by Shell after the gasoline release mitigated those damages, is not a finding that needs to be made when considering numerosity. The proper time to make that determination will be on a motion for summary judgment,[61] or as a matter of law at trial.[62] Moreover, if Defendants are

---

(holding that a class of twenty-nine persons satisfied the numerosity requirement).

**52.** *See Mejdreck v. Lockformer Co.*, No. 01 Civ. 6107, 2002 WL 1838141, at *3 (N.D.Ill. Aug. 12, 2002).

**53.** U.S. Department of Health and Human Services, "Health Consultation, Shell Oil Pipeline Spill, Limestone Township, Kankakee County, Illinois" (Dec. 23, 2002) ("Dep't of Health Consultation"), Ex. C4 to Def. Mem. at 1.

**54.** Compl. ¶ 9.

**55.** Def. Mem. at 1.

**56.** Dep't of Health Consultation at 1.

**57.** *See, e.g., Mejdrech v. Met–Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir.2003) (affirming the certification of a class action involving soil and groundwater contamination while recognizing that the exact number of class members could not be known until after the jury determined the area of contamination).

**58.** Additional evidence supporting this finding includes, among other things, a report prepared by a consultant "on the extent and nature of the plume of contamination resulting from Shell's release of gasoline." Komex, "Kankakee, Illinois, Pipeline Release Site, Anayalsis of Bedrock Contamination, Transport and Distribution" (Apr.1996), Ex. 8 to Pl. Evid. at 1–14. Parsons Engineering Science, Inc., also prepared a report on the extent and nature of the plume of contamination, which supports this finding. *See* Parsons Engineering Science, Inc., Kankakee Release Site Summary Report (July 1997), Ex. 9 to Pl. Evid.

**59.** Def. Mem. at 1.

**60.** *See Szabo*, 249 F.3d at 676.

**61.** *See* Fed.R.Civ.P. 56.

**62.** *See* Fed.R.Civ.P. 50.

correct in this, or other legal arguments, then they will prevail on a class-wide basis.

At this stage, the sole question with regard to numerosity is whether the class of people who may bring claims against the Companies is "so numerous that joinder of all members is impracticable," [63] not whether that class of people will ultimately prevail in those claims. In this case, the numerosity requirement is plainly satisfied for each of the three subclasses.

## B. Commonality

 "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." [64] The key question is whether a common question of fact and law is at the core of Plaintiffs' claims. [65] In this case, numerous common questions of fact and law are at the core of Plaintiffs' claims against the Companies because Plaintiffs' tort claims arise out of a single gasoline release.

Two examples show how common issues underlie class members' allegations and claims. One fact question that a jury may need to resolve is how much gasoline was released. As Plaintiffs point out in their Complaint, it was originally announced that the release involved 16,000 gallons. [66] Later, Shell estimated that 100,000 gallons had been released, but later revised that estimate downward to between 12,000 and 21,000. [67] At the same time, the Illinois Environmental Protection Agency stated that the spill "resulted in the release of an estimated 120,000 gallons." [68] The amount of gasoline released is a factual issue common to every member's claims, but one on which there appears to be disagreement and will need to be resolved.

Likewise, a key legal issue will involve the standard of care that the Companies should have used in building and maintaining the pipeline and whether that standard was breached. "The essential elements of a cause of action based on common law negligence may be stated briefly as follows: the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." [69] In this case, an issue common to all members' claims will be whether there is sufficient evidence to allow a reasonable jury to conclude that the duty was breached. Moreover, if there is such evidence, a jury will need to make that decision on a class-wide basis.

Because such factual and legal issues underlie the tort claims against the Companies, the commonality requirement of Rule 23 is satisfied.

## C. Typicality

The typicality requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." [70] "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." [71] A close nexus between the claims assures that the representatives will advance the interests of all class members because their motive to pursue their claims will be similar to those of the absent class members.

In this case, Plaintiffs have satisfied the typicality requirement because each class member's claim arises from the same event:

---

63. Fed.R.Civ.P. 23(a)(1).

64. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992) (citing *Franklin v. City of Chicago*, 102 F.R.D. 944, 949–50 (N.D.Ill.1984)).

65. *See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998) (holding that the commonality requirement was satisfied and explaining that "factual variations among class members' grievances do not defeat a class action").

66. *See* Compl. ¶ 7.

67. *See id.* ¶ 8.

68. EPA Info. Packet at 1.

69. *Ward v. K Mart Corp.*, 136 Ill.2d 132, 140, 143 Ill.Dec. 288, 554 N.E.2d 223 (1990).

70. *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983). *Accord Falcon*, 457 U.S. at 155, 102 S.Ct. 2364.

71. *La Fuente*, 713 F.2d at 232 (quotation marks and citation omitted).

the gasoline release in November 1988. As a result, Plaintiffs' motivation to prove their claims is typical of all class members. For example, Plaintiffs have similar motivations as the rest of the class to prove that negligence led to the gasoline release and that the Companies are liable for damages suffered as a result. Nonetheless, Defendants object to the appointment of Panozzo and Kibbons as class representatives.[72]

Defendants make three arguments as to why Panozzo's claims are not typical of the rest of the class. The first argument against Panozzo is that he "obtained his property not through an arms-length transaction, but rather through probate after this suit was filed."[73] Their second argument is that "his property was connected to the municipal water system in 1994, long before he acquired the property."[74]

It is not sufficient, however, to oppose class certification by pointing to distinctions that make no difference. Defendants do not explain, and the Court is unable to discern, how the fact that Panozzo obtained the land through probate will affect his motivation to prove his tort claims, much less in a way that prejudices the class.[75] Nor do Defendants explain how the fact that Panozzo's property was connected to the municipal water system in 1994 will eliminate his motivation to prove liability and recover damages. As Plaintiffs argue, Panozzo should be motivated to pursue his claims against the companies because of the loss of the quiet enjoyment and value in his property.[76] There is no reason to hold that his claims are atypical on the basis of the distinctions that Defendants have offered.

■ Defendants' third argument warrants more attention. Defendants allege, and Plaintiffs do not contest, that Panozzo and his mother learned in 1994 that the groundwater well at the property was contaminated with MTBE. In Illinois, "actions ... to recover damages for an injury done to property, real or personal ... shall be commenced within 5 years next after the cause of action accrued."[77] "Resolution of the statute of limitations issue will be central to an adjudication of Mr. Panozzo's property damage claim."[78] Thus, Defendants argue, Panozzo's claims are not typical because he must address this defense.[79] The test is whether this defense will become the focus of the litigation, thereby overwhelming the common issues and prejudicing other class members.[80]

In this case, the fact that Panozzo must address the statute of limitations question makes it more likely, not less, that the interests of the class members will be fairly and adequately protected because many absent members are likely to be subject to the very same defense.[81] As Plaintiffs plead in their Complaint, an announcement about the release was made on November 9, 1988—thir-

---

**72.** *See* Def. Mem. at 21–23.

**73.** *Id.* at 22.

**74.** *Id.*

**75.** Although the manner in which Panozzo acquired his property may require this plaintiff to offer different proof of economic harm than other plaintiffs, this does not mean that his claims are not typical of the rest of the class. The precise amount of compensatory damages may need to be evaluated in individual follow-on proceedings.

**76.** *See* Plaintiffs' Reply Re Class Certification at 7. According to the Complaint, Panozzo is the Court-appointed guardian of his mother's estate because his mother, Marguerite Panozzo, is disabled. *See* Compl. ¶ 40. "Marguerite is the owner of approximately 125 acres partially contiguous and situated directly south of the Danhausen Farm." *Id.*

**77.** 735 Illinois Compiled Statutes ("ILCS") 5/13–205.

**78.** Def. Mem. at 22.

**79.** *See id.*

**80.** *See Robles v. Corporate Receivables, Inc.,* 220 F.R.D. 306, 309 (N.D.Ill.2004); *see also Riordan,* 113 F.R.D. at 63 ("Rule 23(a)(3) mandates the typicality of the named plaintiffs' claims—not defenses.... [I]t is only when a unique defense will consume the merits of a case that a class should not be certified.") (citing *Coleman v. McLaren,* 98 F.R.D. 638 (N.D.Ill.1983)).

**81.** *See Amchem,* 521 U.S. at 613, 117 S.Ct. 2231 (typicality is shown when "named parties' claims *or defenses* are typical" of the class) (quotation marks and citation omitted) (emphasis added).

teen years before the Complaint was filed.[82] Since then, the community around Limestone Township has undoubtedly been made aware of the spill in various ways including, but not limited to, public meetings and water testing.

A critical question to address for most, if not all, class members is when did "the[ir] cause of action accrue"[83] and the limitations period start to run. The fact that Panozzo will need to overcome this defense only makes it more likely that he will adequately protect the interest of absent class members. This defense is neither unique to Panozzo nor will the fact that he must defeat it prejudice other class members.[84] The typicality requirement is thus satisfied.

Finally, with respect to Lisa Kibbons and her son Evan, Defendants challenge her ability to represent a subclass of people exposed to gasoline contamination from the pipeline resulting in personal injury. In particular, they note that Plaintiffs "have not identified any other person who claims to have suffered from ADHD. The central issue regarding Evan's claim will be whether exposure to MTBE is capable of causing ADHD...."[85] Putting to the side that Plaintiffs have *not* alleged that Evan suffers from ADHD but rather alleges problems with his central nervous system,[86] there is no need to resolve whether her claims are typical of the rest of the subclass because, as explained below, the

subclass of people exposed to MTBE fails the predominance requirement of Rule 23(b)(3).[87]

### D. Adequacy

A proposed class representative must "fairly and adequately protect the interests of the class."[88] Adequacy of representation involves determining whether (1) the named plaintiffs' interests are antagonistic to the interest of other members of the class and (2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation.[89] Inquiring into the adequacy of the proposed class representative is meant "to uncover conflicts of interest between named parties and the class they seek to represent."[90] "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims."[91]

■ Panozzo and Kibbons are adequate representatives for proposed subclasses one and two. They suffered their alleged harms as a result of the same accident affecting all class members and they do not have any interests that are antagonistic or in conflict with the class. Plaintiffs' attorneys are also well qualified to conduct this litigation given their vast experience in MTBE litigation.[92] The Court is confident that these attorneys will adequately represent the Plaintiffs and the class.

82. *See* Compl. ¶ 7.

83. 735 ILCS 5/13–205.

84. *See supra* note 81.

85. Def. Mem. at 22.

86. *See* Compl. ¶ 33 ("Evan has been diagnosed by his physician as having the following conditions, all of the central nervous system origin: facial twitching, involuntary spasms in his arms, fatigue, nausea, and chest pains....").

87. Lisa Kibbons also owns property near the gasoline spill and has alleged that her well is now contaminated with MTBE. *See* Compl. ¶ 31. Defendants do not argue that Kibbons fails to satisfy the typicality requirement in representing subclasses one and two.

88. Fed.R.Civ.P. 23(a)(4).

89. *See Chicago Police Ass'n,* 7 F.3d at 598.

90. *Amchem,* 521 U.S. at 625, 117 S.Ct. 2231.

91. *Rosario,* 963 F.2d at 1018.

92. While Defendants do not attack the adequacy of counsel, the court has an independent duty to the class to assure that all of the requirements of Rule 23 are satisfied. Plaintiffs are represented by the law firm of Miller, Axline & Sawyer. One of the named partners for this firm, Duane Miller, represented the plaintiffs who won the nation's first MTBE groundwater contamination case. Another partner, Michael Axline, is a former environmental law professor who has represented plaintiffs in a number of significant environmental cases. Moreover, the law firm has appeared before this Court on over ten motions in the MTBE multidistrict litigation. Finally, Plaintiffs are also represented by John Cashion, former President of the Illinois Trial Lawyer's Association and Joseph Yurgine, who maintains, among other things, an environmental practice in Kankakee County, Illinois.

### E. Maintainability

Because Plaintiffs seek to maintain three subclasses pursuant to Rule 23(b)(3), they must satisfy the two additional requirements imposed by that rule: predominance and superiority.[93] The three subclasses are people who were harmed because:

(1) their real property was contaminated by gasoline resulting in loss of value and quiet enjoyment;

(2) their wells and other sources of water were contaminated by gasoline resulting in expenses associated with procuring uncontaminated water;

(3) they were exposed to gasoline contamination from the pipeline resulting in personal injury, or an increased risk of personal injury.[94]

The question for each of these subclasses is whether the common questions of law and fact predominate over individual issues, and if a class action is a superior method of adjudication in such a situation.

### 1. Subclasses One and Two Satisfy the Predominance Requirement

█ Courts have repeatedly drawn distinctions between proposed classes involving a single incident or single source of harm and proposed classes involving multiple sources of harm occurring over time. The former warrant certification, while the latter do not. For example, this Court has previously denied certification for a class alleging "contamination [of water sources with MTBE] over many years across four states indirectly caused by twenty defendants in conjunction with innumerable third parties who released the contaminant into the environment."[95] Nonetheless, the Court distinguished cases in which classes had been certified because "[i]n each of these cases ... the class representatives alleged a single accident, caused by a single or few actors who released the chemical within a specific geographic location."[96]

In *Amchem*, the Supreme Court drew the same distinction. While denying class certification, the Court nonetheless stated that "mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement."[97] Accordingly, courts have certified classes claims arising out of a single event or course of conduct such as a train crash,[98] a fire in a convention hall[99] or nightclub,[100] an explosion,[101] food poisoning on a ship,[102] a nuclear reactor accident,[103] and chemical or radiation seepage onto adjoining property from a plant or waste burial site.[104]

93. *See* Fed.R.Civ.P. 23(b)(3).

94. *See* Compl. ¶ 252.

95. *In re MTBE Prods. Liab. Litig.*, 209 F.R.D. at 350.

96. *Id.*

97. *Amchem*, 521 U.S. at 625, 117 S.Ct. 2231.

98. *See Sala v. National R.R. Passenger Corp.*, 120 F.R.D. 494, 499 (E.D.Pa.1988) (granting Rule 23(b)(3) class certification in train wreck case and stating "there is no question that the injuries and damages suffered by the class members will have to be determined on an individual basis") (collecting cases).

99. *See American Trading & Prod. Corp. v. Fischbach & Moore, Inc.*, 47 F.R.D. 155 (N.D.Ill.1969).

100. *See Coburn v. 4–R Corp.*, 77 F.R.D. 43 (E.D.Ky.1977).

101. *See In re Shell Oil Refinery*, 136 F.R.D. 588, 591 (E.D.La.1991) ("Where the defendant's conduct occurs in a single incident, such as the explosion at Shell's refinery, the defendants' conduct towards each plaintiff is identical."), *aff'd sub nom. Watson v. Shell Oil Co.*, 979 F.2d 1014 (5th Cir.1992), *reh'g en banc granted*, 990 F.2d 805 (5th Cir.1993), *appeal dismissed*, 53 F.3d 663 (5th Cir.1994) (certifying class claims for punitive damages).

102. *See Bentkowski v. Marfuerza Compania Maritima, S.A.*, 70 F.R.D. 401 (E.D.Pa.1976).

103. *See In re Three Mile Island Litig.*, 87 F.R.D. 433 (M.D.Pa.1980).

104. *See Petrovic v. Amoco*, 200 F.3d 1140 (8th Cir.1999); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir.1988); *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 271 (E.D.Mich.2001); *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 643 (N.D.Cal.1987). *See also Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 388 (D.Colo.1993) (certifying a class of property owners damaged by radioactive and non-radioactive substances released into the ground which damaged their property); *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 67 (S.D.Ohio 1991) (certifying a class of people within six miles of a plant producing enriched

The difference between the former and latter is that proximate causation may be determined on a class-wide basis in a mass accident and the only question left to resolve relates to the damages for each member of the class. In contrast, proximate causation often cannot be resolve on a class-wide basis in the case of exposure to a chemical. Thus, class certification is often denied in such cases.[105]

■ The principle that supports class certification in all of these cases is the same: When liability can be resolved by a jury with a single decision that applies to the whole class, and the only individual question left to resolve relates to damages, class certification is warranted. "As this body of law shows, Rule 23(b)(3) certification is generally granted in a tort case where there is a demonstrated cohesiveness of the class due to a shared experience that is confined in time and place and produces similar effects. Where these elements are not present, certification is usually denied." [106]

Indeed, in *Mejdrech v. Met–Coil Systems Corporation*,[107] the Seventh Circuit affirmed the certification of a class action in a case very similar to subclasses one and two. In *Mejdrech*, a lawsuit was brought against Met–Coil, which owned a factory in a town outside Chicago. Plaintiffs alleged that a storage tank on Met–Coil's property had leaked chemicals into the soil and groundwater. Approximately one thousand members of the proposed class were within a mile or two of the factory.[108] The leaking of the chemicals into the soil and groundwater im-

paired the value of their property and Plaintiffs sought relief under federal and Illinois environmental law.[109] The district court limited class treatment to the "core questions" pertaining to liability and left for individual hearings the issue of whether "a particular class member suffered any legally compensable harm and if so in what dollar amount." [110]

The Seventh Circuit agreed that "not only the amount but the fact of damage might vary from class member to class member." [111] Nonetheless, it held that the action still warranted class certification.

If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings.

The holding in *Mejdrech* is persuasive and controlling. As explained above, there are many common factual and legal issues here that relate to each individual class member's claims. Indeed, almost all of the factual and legal issues up until the moment when the pipeline released the gasoline will likely be identical. These common issues predominate in subclasses one and two because the determination of damages for each individual member of the class, if Plaintiffs establish that the Companies are liable for a particular tort, can be left "to individual follow-on proceedings." [112]

---

uranium for "claims for emotional distress, diminution in the value of their real property, medical monitoring for early cancer detection, and injunctive relief against further unlawful emissions of hazardous substances from the plant").

**105.** Of course, when proximate causation can be resolved on a class-wide basis in a mass exposure case, class certification may be warranted.

**106.** *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456 (S.D.N.Y.2005).

**107.** 319 F.3d 910. *Accord Ludwig v. Pilkington North Am., Inc.*, No. 03 Civ. 1086, 2003 WL 22478842, at *5 (N.D.Ill. Nov. 4, 2003) (factual differences between class members, such as differing levels and sources of arsenic contamination, not great enough to destroy common questions presented by plaintiffs of whether de-

fendant mishandled waste and whether the waste migrated to class members' properties).

**108.** *See Mejdrech*, 319 F.3d at 911.

**109.** *See id.*

**110.** *Id.*

**111.** *Id.*

**112.** *Id.* Even if the predominance requirement of Rule 23(b)(3) were not satisfied, the action could still be certified under Rule 23(c)(4)(A). *See* Fed. R.Civ.P. 23(c)(4)(A) ("an action may be brought or maintained as a class action with respect to particular issues...."). In fact, certification under this subsection is the preferred rule for certi-

## 2. Subclass Three Does Not Satisfy the Predominance Requirement

■ In contrast to subclasses one and two, proximate causation cannot be proven on a class-wide basis for subclass three, alleging personal injuries resulting from exposure to MTBE. While a jury might find that the Companies breached a duty of care when the MTBE-containing gasoline spilled, each member of the class exposed to the MTBE would still need to show that their personal injuries were proximately caused by such exposure. A jury could not make a class-wide determination because the exposure of each member will vary by, *inter alia*, the length of the exposure (*e.g.*, someone who passed through the neighborhood versus someone who lives there) and by the method of exposure (*e.g.*, ingestion versus inhalation). In addition, the medical evidence regarding causation as to the various alleged injuries will vary enormously.

In fact, a similar type of class was rejected by the Supreme Court in *Amchem*, which involved exposure to asbestos. As the *Amchem* Court explained, class members "were exposed to different asbestos-containing products, in different ways, over different periods, and for different amounts of time; some suffered no physical injury, others suffered disabling or deadly diseases." [113] Such a class was not "sufficiently cohesive" under Rule 23(b)(3) because the disparities in the personal injuries suffered by class members were too great. [114]

Likewise, subclass three includes those people who were exposed to gasoline through (1) inhalation of gasoline vapor, (2) penetration of the skin and absorption from showering, bathing or swimming, or (3) through "consumption of, among other things, drinking water and food mixed with water (*i.e.*, baby formula)." [115] The personal injuries suffered from such exposure may include (1) liver problems, (2) central nervous problems, (3) cardiac irregularities, (4) various forms of cancer, (5) chronic hepatitis, (6) facial twitching, (7) fatigue, (8) nausea, or (9) chest pains. [116] Moreover, the class also includes any person who suffered an increased risk of any one of these injuries. [117] While these may, in fact, be injuries that people have suffered from exposure to MTBE, the disparities in the injuries, and the questions of whether the gasoline caused such injuries, are too great to satisfy Rule 23(b)(3)'s predominance requirement. [118]

## 3. Subclass One and Two Satisfy the Superiority Requirement

■ Finally, with respect to subclasses one and two, a class action is plainly superior to other methods of adjudicating. Superiority is established when "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." [119] In this

---

fying a class in the Second Circuit when individual damages need to be calculated individually. *See In re Nassau County Strip Search Cases*, 461 F.3d 219, 230 (2d Cir.2006) ("district courts may employ Rule 23(c)(4)(A) to certify a class on a designated issue regardless of whether the claim as a whole satisfies the predominance test"). However, because the Court is applying the law of the Seventh Circuit, the class will be certified under Rule 23(b)(3).

**113.** 521 U.S. at 609, 117 S.Ct. 2231.

**114.** *Id.* at 623, 117 S.Ct. 2231.

**115.** Compl. ¶ 14.

**116.** *See, e.g., id.* ¶¶ 12–13, 22, 33, 38.

**117.** *See* Compl. ¶ 252 (defining three subclasses).

**118.** *See, e.g., Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir.2006) (affirming denial of class certification in a mass tort

context because "one set of operative facts would not establish liability and that the end result would be a series of individual mini-trials which the predominance requirement is intended to prevent"); *In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir.1990) (holding that individual medical causation issues destroy commonality and hence prevent class certification in case involving exposure to asbestos); *Hurd v. Monsanto Co.*, 164 F.R.D. 234, 240 (S.D.Ind.1995) (denying class certification because "causation in a personal injury case predicated on exposure to [certain chemicals] will necessarily be different for every person in the proposed class, based on each person's length of exposure to [the chemicals], notice, pre-existing medical conditions and other factors").

**119.** *Amchem*, 521 U.S. at 615, 117 S.Ct. 2231 (citing Advisory Committee Note to Fed.R.Civ.P. 23).

case, trying each individual plaintiff's action separately would only lead to wasteful repetition given, for example, that the proof regarding the history of the pipeline's operation and maintenance, the development and use of MTBE and the availability of safer alternative chemicals by the Companies, the migration of the gasoline, and the effects of MTBE contamination will all be identical after the release will be identical.

### 4. Summary

Because common issues pertaining to liability predominate over individualized determinations of damages, and a class action is a superior method of resolving these issues, Rule 23(b)(3) has been satisfied for subclasses one and two. However, Rule 23(b)(3) has not been satisfied for subclass three because common issues do not predominate over individual determinations of proximate causation related to personal injuries allegedly suffered by those exposed to MTBE.

## V. PLAINTIFFS' CLASSES DO NOT SATISFY RULE 23 WITH RESPECT TO THE NEGLIGENCE CLAIM AGAINST THE PARSON DEFENDANTS

■ Plaintiffs' request to certify a class against the Parson Defendants also demonstrates the critical distinction between a class based on a single incident or course of conduct over a defined period of time, and a class based on multiple sources of harm that occurred over differing periods of time in different places. In this case, Plaintiffs base their negligence claims against the Parson Defendants on allegations that the Parson employees who "directed, supervised *or* took water samples from plaintiff's [sic] well and other private water supply wells within the area affected by the release ... *likely* followed a procedure that did not draw down well water by sustained pumping...." [120] However, Plaintiffs only name two of the employees who took water samples and do not say when these employees took the samples. Rather, Plaintiffs allege that the "water sampling by the Parsons during the period 1994 to the present time took place at various times on a twice-a-month basis, *or* monthly, *or* every second *or* every third month." [121]

The fundamental problem with the Plaintiffs' motion to certify a class against the Parson Defendants is that Plaintiffs have not presented any theory or evidence that will establish the defendant's liability for negligence on a class-wide basis, and thus Plaintiffs have failed to satisfy Rule 23(b)(3) because common issues do not predominate over the individual ones. [122] Kibbons and Panozzo might well establish that the employees who took water samples from their personal wells acted negligently, but it would not follow from this finding that other employees at different times and different places also acted negligently towards the people whose wells they sampled. [123]

---

120. Compl. ¶ 84 (emphasis added) (Edith Quick's negligence claim against the Parson Defendants).

121. *Id.* ¶ 19 (emphasis added).

122. For example, Plaintiffs have not provided any evidence that there was a *uniform* procedure followed by the Parson Defendants that was inherently negligent. In such a case, a jury might be able to decide the issue of whether a duty was breached on a class-wide basis. Even if that were the case, however, the question of whether the continued exposure to MTBE, resulting from such breach, caused the alleged variety of personal injuries, could not be proved on a class-wide basis. *See supra* Part IV.E.2.

123. *See Matter of Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293, 1297 (7th Cir.1995). Some courts have held that the centrality of a defense that defeats liability may also warrant class certifica-

tion. *See In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145, 166–67 (2d Cir.1987) (holding that class certification was justified because of the centrality of the military contractor defense), *cert. denied sub nom. Pinkney v. Dow Chem. Co.,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 747 (4th Cir.1989) ("Just as the military [contractor] defense was central to the case in *Agent Orange,* so the question whether Aetna was a joint tortfeasor here was the critical issue common to all the cases against Aetna, and one which, if not established, would dispose of the entire litigation."), *cert. denied sub nom. Anderson v. Aetna Casualty and Sur. Co.,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989). Even if this were the law of the Seventh Circuit, such a class-wide defense for the claim of negligence is not available here.

The Seventh Circuit has explained that bifurcation of trial is permissible when the divisions "carve at the joint" between liability and damages.[124] In this case, however, each member of the class would still need to prove that the particular employee who tested the samples from their water source was negligent even though the claims of every member might share certain factual and legal characteristics (*e.g.*, the Parson Defendants were testing for the presence of MTBE). When liability must be proved on a case-by-case basis, the Seventh Circuit has held that courts may not certify the class.[125]

Because Plaintiffs have failed to satisfy the predominance requirement of Rule 23(b)(3) for their negligence claim against the Parsons Defendants, class certification is denied.

## VI. CONCLUSION

For the reasons discussed above, Plaintiffs' motion to certify subclasses one and two against the Companies for the claims of trespass, private nuisance, negligence, and strict liability is granted. The motion to certify subclass three is denied. Finally, the motion to certify a class action against the Parson Defendants is denied. The Clerk of the Court is directed to close this motion (Docket No. 1066).

---

**124.** *Rhone–Poulenc*, 51 F.3d at 1302. *Cf.* Advisory Committee Note to Fed.R.Civ.P. 42 (describing "separation for trial of the issues of liability and damages").

**125.** *See Rhone–Poulenc*, 51 F.3d at 1302.